### JOHN WATERHOUSE *against* OZIAS BENTON.

A voluntary conveyance, made by the advice, and at the request, of a creditor of the grantor, is not valid as against that creditor; such advice and request not constituting him a party to the conveyance, nor releasing his rights as creditor, nor affecting the legal operation of the deed.

MOTION for a new trial.

This was an action of ejectment for an equal undivided moiety of a parcel of land in *Tolland.*

The defendant pleaded the general issue, which was closed to the court.

On the trial, it appeared, that in the year 1776, *John Walden*, the elder, by deed of gift, conveyed the whole of the described land to *John Walden*, the younger, and *Isaac Walden ;* that afterwards, the plaintiff, *Waterhouse*, levied sundry executions in his favour against *John Walden*, the younger, on his moiety of the land, for the recovery of which, this action was brought.

The defendant claimed one moiety of the land, by virtue of a deed from *Jonathan Walden*, whose title to this moiety accrued by the levy of an execution in his favour against *Isaac Walden.* He claimed the other moiety, also, by a subsequent deed of *Jonathan Walden*, as administrator of the insolvent estate of *John Walden*, the elder. *Jonathan Walden's* claim to this moiety, accrued by reason of a debt due to him from *John Walden*, the elder, at the time of the conveyance to *John Walden*, the younger, and *Isaac Walden*, in 1776. It was claimed by the defendant, that the deed of *John Walden*, the elder, being a voluntary conveyance, was void, as against creditors.

To rebut this claim, the plaintiff offered *Ashbel Chapman*, as a witness, to prove that *Jonathan Walden*, prior to the date and execution of his deeds to the defendant, and the defendant himself, had acknowledged, that the deed from *John Walden*, the elder, to *John Walden*, the younger, and *Isaac Walden*, was made, executed and delivered, by the advice, and at the request of *Jonathan Walden.* The court adjudged this evidence to be inadmissible, and rejected it ; whereupon, the plaintiff moved for a new trial. The court granted a rule to shew cause why a new trial should not be

granted, and reserved the question of law arising on the mo-tion, for the consideration of the nine judges.

*J. T. Peters*, in support of the motion.

EDMOND, J.    On the motion for a new trial, it appears, that *John Walden*, the elder, in 1776, conveyed the described land to *Isaac Walden* and *John Walden*, the younger ;—*Waterhouse* levied sundry executions in his favour, on the moiety of *John*, the younger ; and to recover this moiety, he brings this action.    *Jonathan Walden* levied an execution in his favour on *Isaac Walden's* moiety, and conveyed it to the defendant *Benton ;* on the death of *John*, the elder, *Jonathan*, as administrator of his estate, which was insolvent, sold the other moiety to the defendant, by reason of a debt previously due from *John*, the elder, to him ; and by virtue of these two deeds, the defendant claimed the whole of the described land.

To rebut the defendant's claim, the plaintiff offered *Ashbel Chapman*, as a witness, to prove that *Jonathan Walden*, and the defendant, before the date of his deeds to the defendant, had acknowledged, that the deed of 1776 from *John*, the elder, to *Isaac* and *John*, jun. was made, executed and delivered, by the advice, and at the request of *Jonathan Walden*.    This testimony was rejected by the court ; and, as I think, properly.

The deed of 1776, on the face of it, was a deed of *gift*, a *voluntary* conveyance, and carried with it notice of the nature of the conveyance to all the creditors of *John*, the elder, and to every one else.    The advice and consent of *Jonathan*, did not make him a party to the deed ; his consent was not necessary to the execution of it ; nor could his giving or withholding his consent, alter its legal operation.— Had he advised to the execution of a deed purporting to be for a valuable consideration, it might have misled purchasers, and had a tendency to defraud creditors ; but, to advise to the giving a deed of this description, was neither unlawful nor improper ; especially, as it does not appear by the motion for a new trial, but that at the time of the execution of the deed,

VOL. V.                    S

*John*, the elder, was solvent. The advice, therefore, if it had any influence, in the transaction, could only benefit the grantees, who paid nothing for it while they possessed it, without affecting, in the least, the rights of creditors, or purchasers.

The assent of *Jonathan* to the sale in this manner, did not discharge the debt due to him from *John*, the elder; it was no release of any claim or title he had to the land, for he had none; it was no release of any supposed lien he might have upon it, as a creditor; because, the deed, when executed as advised, could not operate to defeat him, or any other creditor, of their rights. If then, the deed itself, is no bar to the claims of any previous creditor, it would be strange to say, that the consent to the execution of such a deed, and that resting in parol, might be set up to effect that, which the deed itself did not effect.

It has been urged, that if a creditor of a man of property, advise to a voluntary conveyance to his children, or others, such conveyance puts it in the power of the grantee to defraud purchasers, and to obtain a false credit; and that the creditor who thus advises, being accessary to the act, shall never disturb the sale; that it would be a fraud in him.— But this cannot be admitted. All conveyances are matter of record; and when the record shews the conveyance to be voluntary, both purchasers and creditors are affected with notice of the circumstances, under which the grantee holds.

The plaintiff in this action has levied his executions, with this record evidence before him, and has no right to complain; he must have known the circumstances under which he took the land. That *Jonathan* had no better title to *Isaac's* moiety, than he had to *John's*, has nothing to do with this case; he must recover, if at all, on the strength of his own title; and for aught that appears in the motion, *Jonathan*, as administrator, may yet be obliged to dispose of it for the benefit of the creditors of *John*, the elder.

For these reasons, I am of opinion, that the evidence was properly rejected, and that the plaintiff take nothing by his motion.

MITCHELL, Ch. J., REEVE, SWIFT, TRUMBULL, BRAINARD and BALDWIN, Js., concurred.

SMITH. J. dissented, and delivered the following opinion.

The only question of law to be decided in this case, is, whether a person who is present at the making of a voluntary conveyance, and where the same is made by his advice, and at his request, can, at any future period, gain a title to the land, by levying an execution upon it, as the property of the grantor, for a debt due at the time of such conveyance ? This question arose, was involved and decided in offering and rejecting the testimony to prove these facts.

I consider the creditor as waiving, by this conduct, all claim which he might otherwise have, to levy on the land ; and it amounts to an agreement with the grantee, that he will run the risk of collecting his debt otherwise ; and that he will never take away the land from him, in any event ; or it may be considered as amounting to a declaration that he has no existing debt. In either case, so far as it respects the grantee, he ought ever after to be estopped from saying he had a debt against the grantor ; otherwise, the most manifest injustice may be done, by the concealment of the creditor's debt, and by bringing about a voluntary conveyance by his advice, and at his request ; and by inducing the grantee to make large improvements on the land ; all which he may do under the mask of friendship, and at a future period, take the whole land with the improvements. So a creditor may, at the time of such voluntary conveyance, be governed by none other than fair and honourable views, in concealing his debt, and advising to and requesting the conveyance. He may know of other means of satisfying his debt, and there may be other property which he might take ; and in this case, if he will suffer those means to fail, by his negligence, it is unreasonable that he should take the property from the grantee, at any future period, before his debt is out-lawed ; which may be after large improvements have been made ; and will, of course, be after expectations have been raised, and calculations made, with a view to the property.

If a prior mortgagee witness a second mortgage, without giving notice of his claim, this act is considered as a tacit assent, that his own security shall be postponed. So a second lessee may be postponed to the first, of the same lands, where leases are not recorded, and where the first lessee is present at the making of the second, and active in bringing about the bargain, and is a witness of the second lease.

So the mere concealment of a right to real estate, already vested, under certain circumstances, has been frequently adjudged to be a waiver of such right. *Pow. Contr.* 132, 133.

And I think it may be laid down as a general rule, that where a man will stand by, and knowingly conceal his rights, when it is important to another, that they should be disclosed, it is a tacit waiver of such rights. This argument is still more forcible, when he is active, and in any degree instrumental in bringing about a conveyance of property, inconsistent with the exercise of his rights.

I am of opinion, therefore, that a creditor, under these circumstances, is estopped from ever setting up his claim to defeat the grantee's purchase ; and that a new trial ought to be granted.

INGERSOLL, J. also dissented, and concurred in the preceding opinion.

New trial not to be granted.