## PATTEN *against* SMITH and SHEPARD.

*A.* being the owner of chattels, mortgaged them to *B.*, but retained the possession. He afterwards sold them, for a valuable consideration, to *C.*, who had no knowledge of the mortgage to *B.*, and delivered them into *C.*'s possession ; it being part of the contract of sale, that *C.* should pay for the chattels, part in six and the residue in nine months, but if he should fail to make the first payment when it fell due, it should be at the option of *A.* to take back the chattels. *A.* made no claim for the chattels until after the expiration of ten months, when, *C.* dying insolvent, *A.*, without the permission of any one, took them into his possession. In an action of trespass, brought by *B.* against *D.* for taking the property, it was held, 1. that the sale of the chattels to *C.* invested him with a legal title to them ; and 2. that *B.*, when he resumed the possession, had no right to rescind the sale.

A new trial having been granted, pursuant to the decision of this Court, 4 *Conn. Rep.* 450. 455. the cause was tried again at *Hartford, September* term, 1823, before *Hosmer,* Ch. J.

The chattels mentioned in the plaintiff's declaration, were levied on, and taken, by *Smith,* a constable, one of the defendants, and were sold according to law. The plaintiff claimed title to them, before the levy, by a mortgage, dated the 24th of *July,* 1818, from *William S. Marsh,* whose property, and in whose possession, they were, at that time. *Marsh* was permitted, by the plaintiff, to retain, and did in fact retain the possession of them, after the execution of the mortgage, as the apparent owner of them, therewith carrying on the business of a printer; and they have never been taken into the plaintiff's possession. The plaintiff claimed to have proved, that *Marsh,* at the time of the levy, and for some time before, carried on the business of a printer and book-binder, and that the printing apparatus thus taken were the tools and implements of his trade, necessary for upholding his life. The defendants claimed to have proved, that while *Marsh* was in possession of the chattels in question, using them as the apparent owner, he sold them to one *Storrs,* for a valuable consideration, and delivered them to him; and it was an admitted fact, that *Storrs* had no notice or knowledge of the mortgage to the plaintiff. The defendants further claimed to have proved, that *Storrs* agreed to pay for the property 900 dollars, part in six and the residue in nine months; and if he should not make the first payment when it fell due, it should be at the option of *Marsh* to take back the property; that at the expiration of six months, *Marsh* did not take back the property, but it remained in the possession and use of *Storrs* until his death, about ten months after the sale to him; that *Storrs,* at the time of his death, was insolvent; and that shortly afterwards, *Marsh,* of his own accord, and without the consent of *Storr's* representatives, took the property into his possession. The sale to *Storrs* was posterior to the mortgage to the plaintiff.

The Chief Justice charged the jury, in substance, as follows: "In this case, the conversion of chattels mentioned in the declaration, by the defendants, having been admitted, the sole question is, whether the plaintiff, at time of the taking, had title to them. The mortgage of the chattels, by *Marsh,* to the plaintiff, invested him of course with a legal title to them, and the immediate right of possession, if no sufficient objection is interposed. *Marsh* had the right to exercise the trade of printing and book-

*Hartford,*
*June,*
*1824.*

Patten
*v.*
Smith.

binding ; and the tools of these trades necessary for the supporting of his life, are by law protected from attachment and execution : and the same protection is extended to them, in behalf of the plaintiff's title as mortgagor.    The sale of the chattels to *Storrs,* if it were absolute, and not by way of mortgage, and if the purchase was made by *Storrs,* without notice or knowledge of the plaintiff's mortgage, terminated the plaintiff's title.    And the repossession of the chattels by *Marsh,* unless he exercised his option to take them back, at the falling due of the first payment from *Storrs,* or in a reasonable time afterwards, gave him no property in them, nor revived the lien of the plaintiff upon them.    I am of opinion, that *Marsh,* by omitting to take advantage of his option, when the first payment fell due, there being no obstacle claimed to be in his way, and for more than four months afterwards, waived his right by contract to rescind the sale ; and having voluntarily thus elected to consider the sale valid, and rely on the personal responsibility of *Storrs,* it was too late, after his death and insolvency, to make an option, which the contract had never authorized.''

Under this charge, the jury returned a verdict for the defendants ; and the plaintiff moved for a new trial, on the ground of a mis-direction.

*Tousey,* in support of the motion, contended, 1. That the mortgage to the plaintiff was a valid and subsisting mortgage; not being fraudulent as against creditors or purchasers.    It was made to secure a debt justly due, before the sale to *Storrs,* or the taking by the defendants ; and the property conveyed being tools and implements of the mortgagor's trade necessary for upholding his life, the subsequent possession of them by him, constituted no badge, and afforded no presumption, of fraud.    *Patten* v. *Smith & al.* 4 *Conn. Rep.* 450.

2. That the sale made by *Marsh,* without title, and without authority, to *Storrs,* was void; no person being capable of conveying a title to personal property, when there is no fraud, except the owner, or some one by him authorized.    1 *Swift's Dig.* 379. *Kidd* v. *Rawlinson,* 2 *Bos. & Pull.* 59. *Craig* v *Ward,* 9 *Johns. Rep.* 197.

3. That the defendants could not be permitted to say, that the title was in *Storrs.*

*T. S. Williams* and *Trumbull,* contra, contended, 1. That *Marsh* having been permitted, by the plaintiff, to remain in pos-

session of the chattels, using them as his own, the sale to *Storrs* divested the plaintiff of all his interest in them. The plaintiff can claim no exception to the general rule, on account of the *nature* of the property ; for since the finding of the jury, under the charge of the judge, it cannot be taken to consist of tools and implements of *Marsh's* trade necessary for upholding his life. There is no difference, in this respect, between an absolute and a conditional sale. *Pow. Mort.* 28. &amp; seq. 1 *Swift's Dig.* 271.

2. That neither *Marsh*, nor the plaintiff, acquired any right to the chattels, after the sale to *Storrs*. By the sale, *Marsh* parted with all his interest ; and there was no mortgage back to him. *Marsh* had only an option, upon non-payment, to rescind the contract, and take back the chattels. If a time is specified within which an option is to be exercised, it must be done at that time. If no time is fixed, it must be within a reasonable time. *Compton* v. *Burn, Esp. Dig.* 13. *Adam* v. *Richards,* 2 *H. Bla.* 573. *Ellis* v. *Mortimer,* 1 *New Rep.* 257. 1 *Pow. Cont.* 421.

HOSMER, Ch. J. If the plaintiff had neither the actual nor constructive possession of the property, for the taking of which he has brought his action, it is clear, that his suit cannot be supported. That the goods and chattels in question were never in the plaintiff's actual possession, is admitted. Whether they were in his constructive possession, must depend on his title to them. It is agreed, that being the owner, one *Marsh* mortgaged them to the plaintiff, but was permitted to retain them in his possession ; and that, afterwards, he sold them, for a valuable consideration, to *Storrs*, and on such sale, delivered them to him ; *Storrs* having neither notice nor knowledge of the mortgage executed to the plaintiff.

The sale of goods and chattels is a transmutation of property from one to another, accompanied, whenever it is practicable, with a delivery of the articles to the purchaser. It is so much of the essence of a sale, that there be a delivery of the possession, that to permit the chattels sold to remain in the hands of the vendor, is an extraordinary exception to the usual course of dealing, and requires a satisfactory explanation. The conveyance of personal property by mortgage, is subject to the same rule, and governed by the same reason. *Ryall* &amp; al. v. *Rolle* &amp; al. 1 *Atk.* 167. S. C. 1 *Ves.* 359. *Sturtevant* &amp; al. v. *Ballard*, 9 *Johns. Rep.* 339. 340. *Portland Bank* v. *Stubbs* &amp; al. 6 *Mass. Rep.* 425. Possession is the principal *indicium* of property in goods and chattels ; and the retention of them, by

the vendor after the sale, exhibits him to the world as the owner of them ; and, by necessary consequence, is calculated to give him a false or fictitious credit. Besides, no good reason can be assigned, why the buyer should leave them in the hands or the vendor, unless by the exhibition of false appearances, to aid him in imposing on mankind. In the case of a mortgage, the essential purpose is entirely frustrated, by this measure. The creditor requires a mortgage, because he is unwilling to trust in the general responsibility of his debtor ; but if the mortgagor is permitted to retain in his possession the goods mortgaged, what benefit is derived to the mortgagee from the transaction, and in what does he put his trust ? Undoubtedly, his confidence is placed in the credit of the mortgagor, and not in any real or particular security. *Ryall* & al. v. *Rolle* & al. 1 *Atk.* 170. Where the debtor continues in possession of personal property mortgaged, it is fraudulent at common law, and the statute of 13 *Eliz. c. 5. s.* 1. 2. makes provision that the mortgage shall be void. " Possession must accompany and follow the deed ;" that is, the possession must be consistent with the nature of the transaction, and it must be found where it ought to be, considering the subject in its true light. Nor is it sufficient that there be a colourable possession ; it must be actual and *bona fide.* *Wordall* v. *Smith* & al. 1 *Campb.* 333. *Paget* & al. v. *Perchard* & al. 1 *Esp. Rep.* 205. And whether the sale be absolute or conditional, there is no difference, because the reason of the thing is the same. The mortgagor may destroy the property, render it inaccessible, and mortgage it again and again for twice its value ; and this is the same precisely as if it remained in his hands, after an absolute sale. *Ryall* & al. v. *Rolle* & al. 1 *Ves.* 360.

A bond, if in fact assigned, and permitted to be retained, by the assignor, conveys no right to the assignee ; for the evidence of debt remains in the disposition of the assignor, and he may assign it over to other persons. *Ryall* & al. v. *Rolle* & al. 1 *Atk.* 171. 1 *Pow. Mort.* 35. So, a ship at sea may be mortgaged ; but the mortgagee, so soon as may be, after her return, must take possession, or his title will become invalid. *Mair* & al. v. *Glennie* & al. 4 *Mau. & Selw.* 240. and see the cases collected in *Starr* v. *Knox,* 2 *Conn. Rep.* 229.

To the general rule, that the sale of goods and chattels requires a delivery, and the possession of them by the vendee, there are some exceptions ; but the excepted cases, when examined, as they were, by the late Ch. J. Kent, in *Sturtevant* & al.

v. *Ballard*, 9 *Johns. Rep.* 337. 340. furnish a decisive confirmation of the general rule. *Exceptio probat regulam.* I fully adopt the conclusion of the learned judge just mentioned, made in the preceding case, that a voluntary sale of goods and chattels (and I add, a mortgage) with an agreement either in or out of the deed, that the vendor may keep possession, is, except in special cases, and for special reasons to be shewn to, and approved of by, the court, fraudulent and void against creditors. I subjoin, that such proceeding is equally fraudulent against a *bona fide* purchaser.

It results from the preceding principles, that the sale of the property in question, to *Storrs*, a *bona fide* purchaser for a valuable consideration, invested him with a legal title ; and, of consequence, that the plaintiff has no ground, on which he can maintain his suit.

It appears, however, that the sale to *Storrs* was accompanied with a liberty of rescision, at the expiration of six months from the sale ; but that *Marsh* did not avail himself of the privilege, at the time prefixed. Ten months were suffered to elapse, when the vendee died, in a state of insolvency ; and then, without the permission of any one, *Marsh*, under the pretext of right, took the goods sold into his possession. A contract of sale with liberty of rescision, on a day prefixed, is an agreement with a resolutive condition ; and, like every other agreement, it must be construed according to the intention of the parties. Now, it was their obvious intention, that at the expiration of six months from the sale, *Marsh*, at his option, should rescind or affirm the transaction. He could not rescind it, at the expiration of ten months, for two reasons. In the first place, the contract gave him no such authority. *Towers* v. *Barrett*, 1 *Term Rep.* 133. *Compton* v. *Burn*, *Esp. Dig.* 13. *Adam* v. *Richards*, 2 *H. Bla.* 573. But, what is more decisive, he had already, by omitting the rescision of the sale, at the time prefixed, and retaining his demand against *Storrs*, for the consideration agreed to be paid, declared his option. From his inaction, or forbearance of action, he tacitly abnegated the option to rescind, and declared, by his expressive silence, that he chose to consider the sale to be valid. 1 *Pow. Cont.* 131, 2.

I would not grant a new trial.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

New trial not to be granted.