## Swift and another *against* Thompson.

| 9 | 63 |
| 70 | 233 |
| 9 | 63 |
| 71 | 354 |
| 71 | 366 |

Where the machinery of a cotton manufactory consisted, partly, of implements in no way attached or secured to the building ; partly, of spinning frames, standing upon the floor, around the feet of which cleats were placed and  nailed to the floor, to prevent their moving, but such frames were not otherwise attached to the building ; and partly, of other machinery, to the posts of which iron plates were attached, through which wood-screws passed, fastening them into the floor, but by unscrewing such wood-screws, the machinery could be removed without injury to the building or to the machinery itself ; it was held, that the whole of such machinery was personal property.

If the vendee of personal property, under a sale absolute or conditional, suffer the vendor to remain in possession, this is evidence of fraud as against the creditors of the vendor and *bona fide* purchasers ; and unless there be a sufficient excuse shewn to and approved by the court, such evidence is conclusive.

There is no difference, as to its effect, between a conveyance made with an actual intent to defraud creditors, and one fraudulent in law.

Therefore, where *A.*, being insolvent, on the 7th of *August*, mortgaged a cotton manufactory and all the machinery, of every description, thereunto belonging, to *B.*, to secure him for indorsing *A.*'s notes at the bank, which *B.* was eventually obliged to pay ; on the 14th, the deed was recorded in the town-clerk's office ; *A.* continued in possession of the property mortgaged, used it as he had done before, from the execution of the deed until the 15th, when he assigned the same property to *C.* and *D.*, as trustees for the creditors of *A.*, with full power to sell the property and apply the avails in discharge of his debts, subject to such claims as the mortgagee could legally have thereto, and *C.* and *D.* went immediately into possession of the property ; it was held, 1. that *C.* and *D.* were in the condition of creditors and *bona fide* purchasers ; 2. that the deed to *B.*, not being accompanied or followed by possession, was fraudulent and void as against *C.* and *D.*

This was an action of trover for certain articles of machinery used in a cotton manufactory.

Swift.
*v.*
Thompson.

The cause was tried at *Brooklyn, October* term, 1830, before *Williams, J.*

Both parties claimed title to the property under deeds from *Charles Lee.* The defendant having indorsed sundry notes for *Lee,* to the amount of 9,660 dollars, payable at the *New-London Bank, Lee,* to secure the defendant, on the 7th of *August,* 1829, executed a mortgage to him of three pieces of land on the *Willimantic Falls,* in *Windham,* " with a cotton manufactory and all the machinery of every description thereunto belonging." The defendant entrusted the deed, which was taken at *New-London,* about twenty-five miles from *Windham,* to *Lee,* who agreed to procure it to be recorded, which he did, on the 14th of the same month. After the execution of this deed, *Lee* continued in possession of the property therein described, using it as he had done before, until the 15th, when he assigned the same property, with some other real and personal estate, to the plaintiffs, as trustees for his creditors, with full power to sell the property and apply the avails in discharge of his debts, " subject to such claims as the mortgagees legally can have to the same." By a second deed, dated the 18th, he assigned to the plaintiffs all his personal estate not before assigned to them, except such as is by law exempt from execution. At the time when these deeds were executed, *Lee* was insolvent. *Thompson* paid the notes so by him indorsed, as they became due.

The plaintiffs claimed, that the machinery was personal property ; and that as *Thompson* had not taken possession of it, the conveyance to him was void. At the time of the execution of the deeds, part of the machinery was in the manufactory in no way attached or secured to the building. Another part consisted of spinning frames, &c. which were standing upon the floor, cleets being nailed to the floor around the feet of such frames to prevent their moving, but no nail or other fastening in any way attached them to the floor or building. To the posts of the residue of the machinery iron plates were attached, through which plates wood-screws passed, and were fastened into the floor ; but by unscrewing such wood-screws, the machinery could be removed, without injury to the building or to the machinery itself.

The plaintiffs claimed, that under the circumstances of this case, the deed from *Lee* to the defendant was to be considered fraudulent and void ; and that the plaintiffs, under the deeds to them, were entitled to hold the property ; and prayed the judge so to instruct the jury.

The judge charged the jury, that the machinery was personal property ; but though it might have been fraudulently conveyed by *Lee* to the defendant, yet the conveyance was good as against the plaintiffs claiming under said deeds to them ; and directed the jury to find a verdict for the defendant. This was accordingly done ; and the plaintiffs moved for a new trial for a misdirection.

*Strong* and *J. W. Huntington*, in support of the motion, contended, 1. That the machinery in question was to be regarded as personal estate. *Elwes* v. *Maw,* 3 *East* 38. *Cresson* & al. v. *Stout,* 17 *Johns. Rep.* 116. *Gale* v. *Ward,* 14 *Mass. Rep.* 352. *Reynolds* v. *Shuler,* 5 *Cowen,* 323. (a)

2. That if the conveyance of *Lee* to the defendant was fraudulent and void, as against the creditors of *Lee,* it would be so also as against *bona fide* purchasers ; and either way, the plaintiffs would have right to recover. First, the plaintiffs may be considered as creditors, the conveyance being made to them in trust for the creditors ; and in case this property was required for the payment of the debts, they are by law obliged (as would be administrators in a similar case,) to inventory and sell it. *Stat. vol.* 2. *p.* 182. *Minor* v, *Mead,* 3 *Conn. Rep.* 289. Secondly, the plaintiffs are *bona fide* purchasers, for a valuable consideration ; and therefore, as such, have a right to recover. *Kimball* v. *Hutchins,* 3 *Conn. Rep.* 450. *James* v. *Johnson* & al. 6 *Johns. Chan. Rep.* 417. *Battell* v. *Pease, Litchfield* county, 1826. cor. *Daggett,* J. Thirdly, it is no objection to the plaintiffs' right to recover, that they had notice, at the time of taking their deed, of the deed to the defendant. *Doe* d. *Otley* v. *Manning,* 9 *East* 59. *Doe* d. *Watson* & al. v. *Routledge, Cowp.* 705. 711, 12. *Chapman* v. *Emery, Cowp.* 280. *Standen's* case, cited in *Gooch's* case, 5 *Rep.* 60.

3. That if the vendee of personal property suffers the vendor to remain in possession, using it as his own, this is evidence of fraud as against the creditors of the vendor, or a *bona fide* purchaser, and unless there be a sufficient excuse, to be shewn to and approved by the court, it is conclusive evidence of fraud. 2 *Kent's Comm.* 405, 6, 7. 412, 13, 14. 419. *Sturtevant* &

*Windham,*
July, 1831,

Swift
*v.*
Thompson.

(a) Though this point was decided, on the trial, in favour of the plaintiffs' claim, both parties deemed it desirable with reference to ulterior proceedings in the cause, to obtain the opinion of this Court upon it, and therefore, made it a subject of discussion.

al. v. *Ballard,* 9 *Johns. Rep.* 345. *Jennings* v. *Carter* & al. 2 *Wend.* 446. *Patten* v. *Smith* & al. 5 *Conn. Rep.* 196. 200. *Battell* v. *Pease. MS.*

4. That no such excuse is shewn, by any of the facts presented in this case. First, the fact that it was a mortgage, constitutes no such excuse. *Patten* v. *Smith, Battell* v. *Pease,* before cited. Secondly, that the debt attempted to be secured was a *bona fide* debt, is equally unavailing for this purpose. This shews a good consideration, which is necessary; but it is no substitute for the change of possession. *Shep. Touch.* 66. 2 *Kent's Comm.* 406. Thirdly, the nature of the property makes no difference in this respect. *Reed* v. *Blades,* 5 *Taun.* 212. *Battell* v. *Pease.*

*Goddard* and *T. S. Perkins,* contra, contended, 1. That the greater part of the machinery—such as the looms, throstle frames, cards, &c. are fixtures, and pass with the mill. *Lawton* v. *Salmon,* 1 *H. Bla.* 259. n. *Elwes* v. *Maw,* 3 *East* 38. *Lawton* v. *Lawton,* 3 *Atk.* 13. *Miller* v. *Plumb,* 6 *Cowen* 665. 2 *Kent's Comm.* 278. 280. The rule is, that that which is attached to the real estate, and was placed there for the better enjoyment of the real estate, is regarded as a part of it. Another rule, founded on the same general principle, is, that where a fixed engine, instrument or utensil is accessory to a matter of personalty, it is removable; if to the realty, it is irremovable. In this case, the mill could not be used at all as a manufactory, without the machinery.

2. That the deed from *Lee* to the defendant was not fraudulent and void, because it was a mortgage deed, and the time for payment had not arrived. *Stone* v. *Grubham,* 2 *Bulstr.* 225. *Bucknal* & al. v. *Roiston, Prec. Chan.* 285. *Haselinton* & al. v. *Gill* & al. 3 *Term Rep.* 620. n. *Cadogan* v. *Kennett, Cowp.* 432. *Cole* v. *Davis,* 1 *Ld. Raym.* 724. *Ludlow* v. *Hurd* & al. 19 *Johns. Rep.* 218. 221. 2 *Kent's Comm.* 419. *Bissell* v. *Hopkins,* 3 *Cowen* 166. *Homes* v. *Crane,* 2 *Pick.* 607. *Wheeler* v. *Train,* 3 *Pick.* 255. *De Wolf* v. *Harris,* 4 *Mason* 515. 534.

3. That from the nature of the property the defendant was excused from taking possession. A removal of the machinery would render the whole establishment useless, and defeat the object in raising the money. *Steward* v. *Lombe,* 1 *Brod.* & *Bing.* 506. (5 *Serg.* & *Lowb.* 167.) *Latimer* v. *Batson,* 4

*Barn. & Cres.* 682. (10 *Serg. & Lowb.* 432.) *Watkins* v. *Birch* & al. 4 *Taun.* 823. *Jezeph* v. *Ingram,* 4 *Taun.* 838. *Leonard* v. *Baker,* 1 *Mau. & Selw.* 25.

4. That at any rate, this deed is valid against the plaintiffs, who claim under the mortgagor, and who took the estate subject to the defendant's mortgage. The assignees stand in the place of the assignor. They are neither creditors within the 13 *Eliz.* nor purchasers for a valuable consideration within the 27 *Eliz. Bean* v. *Smith* & al. 2 *Mason* 276. 278. *Gray* v. *Wilkinson,* cor. *Story,* J. at *Newport, R. I. June* 1829. *Sullivan* v. *Redmond, U. S. Law Intellig. vol.* 1. *no.* 8. for *August* 1829, *p.* 246.

DAGGETT, J. There were two principal questions raised and discussed at the bar, and decided by the judge at the circuit, and which are now to be examined.

1. Was the property described personal or real? The judge declared it to be personal. If any part of it be real, it is very clear, that no recovery can be had for such part. I think the decision of the judge thus far correct. It consisted of various articles of machinery belonging to a manufactory of cotton cloth; which, with their connexion with the building, are particularly described in the motion. Beyond a doubt these articles are in no respect real estate, except as they are attached to the freehold. It is material here to observe, that an important part of the description is, that they were thus attached to the building to render them stable, but that they might be removed to any other part of the building, or to any other place, without any injury to the freehold. To operate successfully, they must be fixed, like clocks, and many other articles, which are clearly personal and moveable. We resort, then, to the criterion established by the rules of the common law: could this property be removed without injury to the freehold? The case finds this fact. This then should satisfy us.

But we will look at it more closely. This question has arisen and been decided in three classes of cases. 1. Between the executor and heir; and there it is considered favourably to the latter, upon a familiar principle of the common law, *viz.* that the heir is to be favoured. 2. Between the executor of the tenant for life and the remainder-man or reversioner. 3. Between landlord and tenant; and here the greatest indulgence is shewn to the tenant, especially where the annexations are

for the support of trade and manufactures. *Elwes* v. *Maw,* 3 *East* 38. 2 *Kent's Comm.* 279, 80. But in *Cresson* & al. v. *Stout,* 17 *Johns. Rep.* 116. and in *Gale* v. *Ward,* 14 *Mass. Rep.* 352. articles of this description were declared to be personal property. The same principle is necessarily implied in *Bostwick* v. *Leach,* 3 *Day* 476. In no court, within my knowledge, have they been deemed otherwise. The argument *ab inconvenienti* may also be entitled to some consideration, both as it respects debtor and creditor. If a spinning machine be real estate, a part of it might be set off, by metes and bounds, in satisfaction of a small debt. I entertain no doubt on this point.

2. The great point remains to be considered. Was this bill of sale valid, possession not accompanying or following it ? The judge at the circuit charged the jury, that though this property was fraudulently conveyed, by *Lee* to the defendant, yet the conveyance was good against the plaintiffs claiming under the deed from *Lee,* and therefore, their verdict ought to be for the defendant. This part of the charge I think erroneous. It might seem, that this charge presents a very narrow enquiry ; but as the cause is again to be tried, the broad question whether a sale of personal property by a deed, either absolute or by way of mortgage, be good, unless possession accompany the sale, will be considered and disposed of. In my opinion, if the vendee of personal property suffer the vendor to remain in possession, this is evidence of fraud as against the creditor of the vendor, or a *bona fide* purchaser, be the sale absolute or conditional ; and unless there be a sufficient excuse shown to and approved by the court, that evidence is conclusive. In *Edwards* v. *Harben,* 2 *Term Rep.* 587., it was declared, by the court of *King's Bench,* that an absolute bill of sale was a fraud in law, unless possession accompanies and follows the deed. This principle was recognized, in express terms, by the supreme court of the *United States,* in *Hamilton* v. *Russell,* 1 *Cranch* 309.

The facts in this case, so far as they regard this point, are these. On the 7th of *August* 1829, *Lee* made a deed of the building and machinery, in which the articles in question were then, and had been, for years before, used. This deed was executed at *New-London,* about twenty-five miles from *Windham,* the place where the manufactory was situated. The defendant then delivered the deed back to *Lee,* under an agree-

ment that he should, immediately on his return to *Windham*, procure it to be recorded. *Lee* remained in possession, using the machinery as his own, until the 15th of *August,* when he conveyed it to the plaintiffs, and delivered immediate posses- sion, having lodged the deed to the defendant for record, on the 14th. The deed was made to the plaintiffs, as trustees for the creditors of the grantor, with full power to sell the proper- ty and apply the avails in discharge of his debts. The deed to the plaintiffs counted upon a mortgage made to the defendant, and declared it subject " to such claims as the mortgagee can legally have to the same." There was no doubt as to the va- lidity of the debts of the defendant ; but there was no pretence of any possession by him other than what arose out of the de- livery of the deed. *Lee,* at the date of these deeds, was insolv- ent.

The condition of the plaintiffs, then, is that of creditors and *bona fide* purchasers. They profess to be, and in truth are, the creditors of *Lee ;* for they represent his creditors ; and the deed is, therefore, of the same force as though made to the creditors respectively by name. They have the same rights, then, as they would have, if they had obtained executions, and executions had been levied on this property. They are, there- fore, entitled to all the rights, which *Lee* could transfer to them and whatever could be taken by execution, that is, to his in- terest in those chattels. They are also *bona fide* purchasers, by all the rules which apply to this subject. They receive this property to sell, and apply the avails in payment of his debts. They are, then, creditors, and *bona fide* purchasers. *Minor* v. *Mead* & al. 3 *Conn. Rep.* 289. *Kimball* v. *Hutchins,* 3 *Conn. Rep.* 450. *James* v. *Johnson,* 6 *Johns. Chan. Rep.* 417.

The simple and intelligible rule of law laid down in *Ed- wards* v. *Harben,* and *Hamilton* v. *Russell* above cited, would seem to settle this case. But it is admitted, that this rule has been repeatedly broken in upon, in *Great-Britain* and in this country. The exceptions have become so numerous (by one respectable court they are declared to be no less than twenty- seven in number) that they seem rather to abrogate than es- tablish the rule. It may be doubted whether the principle is not sound, and whether many of its modifications do not tend to promote, rather than to suppress, fraud.

The doctrine of this court, as established in *Patten* v. *Smith,* 5 *Conn. Rep.* 196. is, that a sale of goods and chattels, either

absolute or by way of mortgage, with an agreement either in or out of the deed, that the mortgagor shall remain in possession, except in special cases and for special reasons, to be shewn to and approved by the court, is fraudulent and void against creditors and *bona fide* purchasers. This has been the law of *Connecticut* for the last forty years, if not from the beginning. It is not according to the course of the court to call this a fraud *per se*, and to direct the jury to find the sale void, but the question is submitted to the jury as a question of fact, with instruction that if they find none of the established exceptions, they will find the transaction fraudulent. I see no good reasons to depart from these principles.

Let us now attend to the objections urged against the claim of the plaintiffs.

First, it is urged, that the plaintiffs had notice of the mortgage to the defendant, and that too of the specific claim of the defendant. This notice, however, could have no effect; for if they knew of the prior conveyance, they knew also, that the vendor remained in possession, using the property as his own, and as he had been using it years before; and they therefore knew, that the sale to the defendant, so far as it related to the personal property, was void. All the authorities are one way on this point. *Doe* d. *Otley* v. *Manning*, 9 *East* 59. *Doe* d. *Watson* & al. v. *Routledge, Cowp.* 705. 711, 2. *Chapman* d. *Staverton* v. *Emery, Cowp.* 278. 280. *Gooch's* case, 5 *Rep.* 60. *Reed* v. *Blades* & al. 5 *Taun.* 212. *Waterhouse* v. *Benton*, 5 *Day* 136. There is no difference as to this question, whether it is a fraud in fact, or whether the fraudulent intent be inferred, and therefore a fraud in law. If a creditor knows, that personal property has been attached or taken by execution, or sold and paid for, and is in possession of the debtor by design, he may attach the property, levy his execution and sell it, or take a bill of sale of it in discharge of his debt; or even a person not a creditor may safely buy it; for the transaction, there being nothing more in the case, is fraudulent and void.

Secondly, the nature of this property, it is urged, forbids the taking of possession by the vendee. Why? it may be asked. The case finds, that it can be removed without injury to it or the building. It may be employed in another building occupied as a cotton manufactory, or it may be sold.

It is again said, that the owner of the building will find it useless, without machinery. Nor can a hotel be successfully

occupied without furniture ; nor a farm, without utensils and stock ; nor a theatre, without dresses and scenery ; but who would contend, that all such property might be sold, and the vendor retain possession consistent with the rule of law. In *Reed* v. *Blades* & al. 5 *Taun.* 212. a conveyance was made by mortgage of a leasehold building occupied as an opera house ; and in the same instrument, the dresses, scenery and decorations were conveyed. The conveyance of the leasehold property was holden good ; but of the chattels, no possession accompanying it, the deed was holden void. I entertain no doubt on this point.

Thirdly, it is insisted, that this conveyance to *Lee* is by way of mortgage, and that in such case, it is consistent with the deed that the property shall remain with the vendor. It is no part of the deed that possession should remain ; nor is there any suggestion of any such agreement out of the deed. If this deed, then, be good because conditional, then it is so in all cases where it is conditional ; but there can be no authority for such a position. In *Ryall* & al. v. *Rolle*, 1 *Atk.* 165. and in *Worseley* & al. v. *De Mattos* & al. 1 *Burr.* 467. it was declared, that there was no difference between an absolute deed and a mortgage, where the vendor remained in possession ; they are equally fraudulent. It may be said, that these cases were under the bankrupt act of 21 *Jac.* ; but the whole reasoning of the court was in opposition to such conveyances as fraudulent and void, by the statute of 13 *Eliz.* and by the common law. The mortgagee can take possession of mortgaged goods ; and there is no reason why he should not, except in special cases, unless to procure a collusive credit. No special reason is assigned, in this case, why the mortgagor appears and acts as owner. He may impose upon mankind, by false appearances, obtain new credit, and mortgage the property a hundred times over. Bills of sale are never recorded, unless where goods or chattels are embraced in the same deed with the land ; nor can they, in such case, be constructive notice ; for this is true only of *deeds* required to be recorded, as was decided recently in *Middlesex* county, in the case of *Carter* v. *Champion* & al., 8 *Conn. Rep.* 550.

In the case of *Cadogan* v. *Kennett, Cowp.* 432. it was part of the trust on the face of the deed, that goods conveyed to trustees for the use of the husband, and then to his wife, in consideration of marriage and the marriage portion, should remain in possession of the husband ; and the transaction being fair, the

*Windham, July, 1831.*

Swift
*v.*
Thompson.

court held, that they were not liable to an execution of a creditor existing at the time of the deed. It was part of the trust, that the goods should remain in the house.

The doctrine of *Ryall* & al. v. *Rolle* and *Worseley* & al. v. *De Mattos* & al. was recognized, by the supreme court of *Massachusetts,* in *The Portland Bank* v. *Stubbs,* 6 *Mass. Rep.* 422. That was a pledge of personal property. *Parsons,* Ch. J. calls it a mortgage, and says, that a delivery of the chattel is essential. The same principle was established in *Reed* v. *Blades* & al. 5 *Taun.* 212. above cited.

But I forbear to cite authorities. As late as 1824, in the case of *Patten* v. *Smith* & al. 5 *Conn. Rep.* 196. this Court declared, that in a mortgage or in an absolute sale, if the possession remained in the vendor, it is fraudulent, unless explained. It will not be said, that this case is within any exception ever recognized by this Court ; (and I am not aware by any other,) and therefore, it is within the rule. The doctrine is illustrated, and all the cases reviewed with great ability, and in a satisfactory manner, in 2 *Kent's Comm.* 406 to 419.

Fourthly, it only remains to consider an objection arising out of the fact, that *Lee* could convey only what remained in him ; and as his deed to the defendant was upon a good and sufficient consideration, it is said, nothing remained in him to assign to the plaintiffs. This has been already adverted to, under another head. I would further observe, that the only cases cited in support of this objection bear not at all on the point. In *Bean* v. *Smith* & al. 2 *Mason* 252. and *Astor* v. *Wells* & al. 4 *Wheat.* 466. it was decided, that a *bona fide* purchaser *without notice,* from a grantee to whom property had been conveyed to defraud creditors, is entitled to hold the same against the creditors of the grantor. These decisions are opposed to the doctrine of this Court, in the case of *Preston* v. *Crofut,* 1 *Conn. Rep.* 527. It was holden, in that case, that the first deed being void under our statute, gave no title ; for there was nothing in the grantee to convey. But, it is not easy to see any application of either of these principles to this case.

The plaintiffs took this deed knowing of the prior mortgage ; and they also knew, that it was void, because *Lee* remained in possession using it as his own, and as he had used it for years. The deed to the defendant, then, was fraudulent. The law will not stop to enquire whether there was actual fraud or not ; but will infer it, at all events ; for it is against sound policy to

suffer the vendor to remain in possession, whether an agreement to that effect be, or be not, expressed in the deed. 2 *Kent's Comm.* 412. The same doctrine is established in *Doe* d. *Otley* v. *Manning*, 9 *East* 59. and in *Rob. Fraud. Con.* 39, 40. Had this deed to the defendant been made with an express intent to defraud the creditors of *Lee*, it could not stand in the way of the plaintiffs' deed ; nor can it, being fraudulent in law. There is no difference.

Let there be a new trial.

Hosmer, Ch. J. and Peters and Bissell, Js. were of the same opinion ; the latter having expressed some doubt as to the condition in which the plaintiffs stood.

Williams, J. I concur with the court, that the machinery is personal property ; but I am not satisfied that the other part of the charge was incorrect.

The plaintiffs are, by *Lee* himself, constituted his assignees, by a deed entirely voluntary on his part ; and as such, they claim, that they can treat as void a prior deed, given by *Lee*, to secure his indorser, as he neglected to take possession of the property conveyed by it. No actual fraud is pretended in the first deed. There was no pretence of any trust, otherwise than as it may be inferred from the fact that the mortgagor of machinery in a cotton mill was suffered to retain possession of it, for the space of seven days after the mortgage, without any provision being made to change the possession. At most, therefore, the plaintiffs can only claim it as a question of constructive fraud, as a voluntary conveyance is fraudulent. Our legislature has adopted the statute of 13 *Eliz.* as to creditors, without its proviso ; but not the statute of 27 *Eliz.* as to purchasers. But as it has been holden, that the principles of the common law would have effected all that was valuable in those statutes, we must consider the cases determined under those statutes as generally applicable to the great object contemplated by those statutes, *viz.* to prevent covinous and deceitful conveyances made with intent to defraud, and to protect those who were thus attempted to be defrauded.

*Thompson's* deed is clearly good against the grantor and his representatives, but is, if fraudulent, void as against creditors or *bona fide* purchasers only. The plaintiffs, then, must shew, that they are either creditors or *bona fide* purchasers.

Are they creditors? I should hardly think this could be claimed. That they are placed in a situation in which they have assumed certain duties to those creditors, is admitted; but this certainly does not make them creditors. If they receive nothing, they of course are to pay nothing. Their obligations are commensurate only with their receipts, or what they might have received. So far from being creditors, they are agents of *Lee,* as well as agents of *Lee's* creditors, and have assumed certain duties, at his request, to perform for the mutual benefit of *Lee* and his creditors. Still I cannot see how this constitutes them his creditors. *Lee* could not transfer his liabilities so as to substitute the plaintiffs in the place of his real creditors; nor are his creditors under any obligation to refrain from commencing suits against him. If it is to be presumed, that the creditors assent to this arrangement, it does not render them less the creditors of *Lee ;* nor can they make the plaintiffs creditors, except by an assignment of their claims. If it were necessary to give such a construction to carry into effect the object of the statute, I am not prepared to say how far we might go to suppress fraud. But as the hands of the creditors are not bound; as they have all the rights remaining to try the question of fraud, that existed before this assignment; I see no reason to justify the adoption of this latitudinarian construction. If it be said, that they represent creditors, this does not make them creditors. The agent and attorney represent their principals, but are not principals. The ambassador represents the government, but yet he is not the government. These assignees, who take not by operation of law, not by a statutory execution, but receive their power and their property from the debtor, cannot, in any legal sense, be said to be his creditors. Had one solitary case been produced, in which a court of equity had treated them as creditors, because they represented their interest, I should not think it followed, that a court of law could treat them as creditors within the intent of that statute. In *Walker &* al. v. *Burrows,* 1 *Atk.* 83. the assignees of a bankrupt brought a bill to set aside a prior voluntary conveyance, on the ground (among others) that it was within the statute of 13 *Eliz.* The Lord Chancellor, however, refused to set aside the conveyance, on that account ; as there was no proof that the bankrupt was *indebted at the time of such conveyance.* That opinion would seem to imply, that if he had been indebted, it might have been

otherwise. But the question as to the rights of the assignees was not discussed at all, or decided. And *Roberts*, in his treatise on *Fraudulent Conveyances*, says, " that there is no case to shew that even a *bona fide* conveyance to a trustee for payment of debts will have the effect"—*i. e.* to overthrow a prior voluntary deed. *Rob. Fr. Con.* 369. And in the case of *Bassett* v. *Clapham*, 1 *P. Wms.* 358. where there was an assignment to trustees, and a prior voluntary settlement was in their way, the *creditors*, and not the trustees, brought the bill to set aside that conveyance. The result, therefore, is, that the plaintiffs cannot claim as creditors.

Can they claim as *bona fide* purchasers? The object of the statute of 27 *Eliz.* was to protect those who honestly paid their money for lands previously conveyed away, by the grantor, to his friends, without a valuable consideration. When there was no publicity given to the transfer of estates, such a regulation was much more necessary than when every title is upon record. The object was important, and the effect salutary; but it is to protect the *bona fide* purchaser only. Those who have paid nothing, or next to nothing, (and, in my opinion, those who come in as champions of litigation) are not the objects of this statute.

The consideration must be valuable. *Taylor* v. *Jones*, 2 *Atk.* 600. *Twyne's* case, 3 *Co.* 83. And inadequacy of consideration is evidence that it is not *bona fide*. *Doe* d. *Parry* v. *James*, 16 *East* 212. Those who claim to overthrow a prior deed must be *bona fide* purchasers, not in a legal sense merely, but in the vulgar and common intendment. *Rob. Fr. Con.* ch. 4. s. 1. The plaintiffs have paid nothing, unless one dollar is such payment; nor are they ever to pay any thing, but what they derive from the estate conveyed. They cannot, therefore, be injured,—they cannot be defrauded,—if the prior conveyance stands. They are mere volunteers. They may be so far *bona fide* purchasers as to hold against a prior unrecorded deed. *Dey* v. *Dunham*, 2 *Johns. Chan. Rep.* 189. But they are not the *bona fide* purchasers intended by this statute. So it was judicially determined, by *Lord Hardwicke*, in the case of *Walker* v. *Burrows*, 1 *Atk.* 93. before cited. There the assignees claimed to set aside a prior voluntary conveyance, first, as void by the 13 *Eliz.*—secondly, as void against them as purchasers under the 27 *Eliz.*—and thirdly, as void under the statute of 21 *Jac.* 1. *c.* 15. The Lord Chancellor says, that un-

*Windham,*
*July, 1831.*

Swift
*v.*
Thompson.

der the statute of 27 *Eliz.* a settlement is clearly void, if voluntary, which is not for a valuable consideration, and subsequent purchasers shall prevail to set aside such settlement ; but this can only be applied to the case of subsequent *purchasers ;* and therefore, there is a plain distinction between the two statutes. His Lordship adds, that the assignees, standing in place of the bankrupt, are bound by all acts fairly done by him, notwithstanding they gave the legal estate ; and this proves, that assignees of bankrupts are not considered as purchasers of the legal estate for every purpose ; and that the consideration of five shillings and other considerations, does not oblige the court to hold it, at all events, to be a valuable consideration. 1 *Atk.* 94.

The Lord Chancellor, it is true, speaks here of acts done fairly by the bankrupt. As applicable to the case before him, it seems to me he must have used that term in contradistinction from a case of actual fraud ; for voluntary conveyances are void only as they are fraudulent. *Doe* d. *Watson* & al. v. *Routledge, Cowp.* 705. 710. *Rob. Fr. Con. ch.* 4.

Again : trustees of bankrupts, (of course, trustees created by the bankrupt himself,) take the property subject to all the equities with which it is charged in the hands of the bankrupt. This is a well settled rule in equity. Thus, if they apply to a court of chancery for a legacy due the wife of the bankrupt, they must make provision for the wife ; for they ought not to be in a better condition than the bankrupt himself. *Jacobson* & al. v. *Williams,* 1 *P. Wms.* 382. *Cox's* note to *Bosvill* v. *Brander,* 1 *P. Wms.* 460. So, if there be a defective conveyance made by the bankrupt, or an agreement to convey not executed ; the assignees take the estate subject to this charge. *Russell* v. *Russell,* 1 *Bro. Chan. Rep.* 269. *Taylor* v. *Wheeler,* 2 *Vern.* 564. And in this respect, assignees differ from *bona fide* purchasers of the legal estate, and from mortgagees, who are considered *quasi* purchasers. Case of *Howe* & ux. 1 *Paige,* 125. 128. So it is said, by Lord Chancellor *Parker,* in *Cock* v. *Goodfellow,* 10 *Mod.* 489. 497. that the commissioners can assign nothing but what the bankrupt could honestly assign to them. And Lord *Hardwicke* says, that although assignees of bankrupt be trustees for creditors, yet they stand in the place of the bankrupt, and can take in no better manner. *Brown* v. *Heathcote* & al. 1 *Atk.* 160. 162. And Lord *Kenyon* says, that the assignment under the commission passes only

such property as the bankrupt is conscientiously entitled to. *Harrison* v. *Walker* & al. *Peake's Ca.* 111. These cases are not brought to prove that assignees may not avoid a fraudulent deed; but to shew, that they are treated in a very different manner from *bona fide* purchasers.

That so few cases have arisen under the bankrupt law, where this point arose, is not very strange, when we recollect that the statute of *James*, authorizing the assignment of property in possession of the bankrupt, followed so closely after the statutes of 13 and 27 *Eliz.;* and that by these statutes, a fraudulent grant or conveyance is an act of bankruptcy. *Rob. Fr. Con.* 493. n. *Cooke's B. L.* 120.

But in the recent case of *Robinson* v. *Mc Donnell*, 2 *Barn. & Ald.* 136. the question seems to have arisen, and to have been directly met, by the Chief Justice of the *King's Bench.* There, *Bell* and *Clarkson*, for a nominal consideration, as expressed, but really as security, assigned to *Sharpe* two ships, and a register was taken out in his name ; but as it was intended merely to secure *Sharpe* for acceptances to be made for *B.* and *C.*, it was agreed that *B.* and *C.* should retain possession and use the ships as before ; which they did. At the end of six months, *Sharpe* failed, and his assignees took possession of one of the ships; after which *B.* and *C.* became bankrupt ; and their assignees brought trover against *Sharpe's* assignees for the ship of which they had possessed themselves ; and it was holden, that if the assignees of *Sharpe* had not taken possession of the ship, it would, under the statute of *Jac.* 1., have belonged to the assignees of *B.* and *C.*, as these bankrupts would have been the reputed owners. And Lord Ch. J. *Abbott* adds : " The bill of sale might have been void under the statute of *Elizabeth* as against creditors, but not as against the party who executed it ; *and their assignees are, in this respect, in no better situation.*" An opinion like this from the Chief Justice of the court of *King's Bench,* uncontradicted by his brethren, furnishes strong evidence of the law in *Great Britain* upon the rights of assignees of bankrupts. If it be said, that this may be founded upon the particular phraseology of their statutes concerning bankrupts, it is a sufficient answer, that no such thing is intimated in the opinion ; and it would certainly be very strange, that those acts should not give as much authority to those who act under them, as the debtor himself could give by a voluntary assignment.

But the statutes relating to bankrupts are not thus limited. By the statute of 34 & 35 *Hen.* 8. the Lord Chancellor is authorized to take the lands, tenements &c. of the bankrupt, as much as the interest, right and title of the same offender shall extend or be, and may then lawfully be departed with, by the said offender. The statute of 13 *Eliz. c.* 7. provides, that lands may be taken, purchased for his use, or of or for such use, interest, right or title, as such offender then shall have in the same, which he may lawfully depart with, or with any person of trust, to any secret use of such offender. From these expressions it would seem, that if the property in question was so situated that the bankrupt could assign it to trustees to pay his debts, the commissioners might. But were it otherwise, and had it been holden, that the assignment of a bankrupt's estate is a statutory execution, it would not therefore follow, that a voluntary assignment, by the bankrupt himself, would have the same effect. Such a conveyance is certainly good to a *bona fide* purchaser, and perhaps to a creditor ; I say *perhaps* to a creditor ; because it has not been as yet judicially decided here, so far as I know, that even a creditor can take the property from his debtor, except by legal process. In *Kimball & al.* v *Hutchins,* 3 *Conn. Rep.* 450. the evidence to prove that the grantee in the deed was a creditor, was ruled out, by the judge ; who also ruled, that the deed was not void as against a *bona fide* purchaser. The latter opinion was overruled, by this Court ; but no notice was taken of the former.

Without giving any opinion upon this point, however, I hold, that the plaintiffs are not creditors of *Lee,* nor *bona fide* purchasers, but mere volunteers, taking no more interest than he had ; and that it follows they can claim no more than he could.

The view which I have taken of the case, makes it unnecessary for me to consider another question made at the trial, as to the effect of *Lee's* retaining possession of this machinery. That question is so much embarrassed with conflicting opinions, that I am not disposed unnecessarily to meet it. If the charge was correct, the plaintiffs cannot make that question.

Thinking that it was, I am of opinion that there should be no new trial.

New trial to be granted.