## YAZOO & MISS. VALLEY RAILROAD CO. *v.* JEFF. WILLIAMS.

1. SUPREME COURT PRACTICE. *Instruction destroyed by party obtaining it.*
   Where on the trial of a cause counsel for one of the parties asks an instruction which is refused, the court giving one in lieu which is destroyed by such counsel, on appeal by this party, the supreme court not having before it the substituted one, will dispose of the case as if the refused instruction had not been asked.

2. VERDICT. *Railroads. Injury to animals on track.*
   On appeal, after motion for a new trial overruled in the court below, a verdict against a railroad company for injury to animals on the track, though its correctness is doubted, will not be disturbed if the controverted question of fact as to negligence has been submitted to the jury on proper instructions, and the finding is not without evidence to support it.

FROM the circuit court of Leflore county.

HON. J. B. CHRISMAN, Judge.

Appellee recovered a judgment against appellant in the court below for one hundred and twenty-five dollars, damages for a mare killed and injury to a mule, struck by a running train. No point is made in this court as to the amount of the recovery. The only controversy is as to the liability of the company for the injury to the stock. On this point the evidence is set out at length, that for the plaintiff being given in full as it appears in the bill of exceptions.

Bonner Lee testified:

"That the track was straight where the stock were struck, and nothing on the track or on either side to obstruct the view of the engineer for half a mile before striking the horses; that witness was going to the Alliance meeting—was travelling from the train as it approached and about two hundred yards from the track; heard the train coming and was looking toward it; when the engineer got near the stock-guard he saw it, and then saw the animals in question on the track fifty or one hundred yards in front of the engine and at that instant he passed behind the body of a tree which intervened between him and the horses, and when he passed from behind said tree they were knocked off, but he did not see

them struck; that he did not see the horses on the track until the engine blew the whistle; that the train stopped at the cross-road below the cattle-guard, and that he has stepped the distance from the cattle-guard to said crossing, and found it to be three hundred yards; that the engine stopped on said crossing; that there were other horses on the track, but made their escape. The horses ran about thirty yards before they were struck, and there was a rail fence which came up to the cattle-guard above where the horses were struck. It was, I suppose, eight or nine rails high. The whistle was not sounded till they were right on the stock and the train did not slow up till it struck the stock."

John Johnson testified:

"That the train which struck the stock in question was going south; that he was on west side of the railroad travelling southeast and nearly parallel with the train as it approached the stock; that when the train was at or near the stock-guard he saw for the first time the animals in question on the track about fifty or sixty yards below the engine; but he was looking at the train and not for the stock—that he heard the train coming and was looking out for it, and when he saw the stock he thought to himself that the train would get them, and they did not run down the track more than fifty yards before they were hit; that there is a field north of the cattle-guard and nothing to obstruct the view on the track for half mile or more—that south of said cattle-guard on both sides of the railroad outside of the right of way is woods and cane; that if the whistle blew he did not know it. The train did not slow up till it struck the stock, and it appeared to him to be a wilful killing."

Redmond, for defendant, testified substantially as follows: I was engineer of the train. While in the field, some distance above the cattle-guard, I blew the whistle for the crossing below. Saw three horses or mules on the right-of-way, south of the cattle-guard; they were slightly frightened by the whistle, but began grazing again. While keeping watch on these animals two others sprang upon the track, about thirty feet in front of the engine; they were concealed from view by the fence which came up to the track.

I immediately reversed the engine, threw open the throttle, blew for brakes, sanded the tracks, and did everything in my power to stop the train before striking the animals, but this was impossible. Did not see the animals until in the act of going upon the track; was watching the others. Did not sound the whistle for the reason that it is characteristic of mules when frightened thereby to run toward the track. This was a freight train of eight or nine cars, running about eighteen miles an hour. Everything was in good working order. Without air-brakes no engineer on earth could have stopped that train in time to prevent the injury after the animals were seen. It was impossible to stop the train short of two hundred and fifty or three hundred yards. The others ran upon the track, but they were far enough ahead to escape.

The conductor testified, on behalf of defendants, that he was on the train, and when the whistle sounded he rushed to the top; that the brakes were promptly applied, and that he knew the engine was reversed, for he felt the sudden jar.

At the instance of plaintiff the court, in accordance with the statute, instructed the jury that proof of the injury was *prima facie* evidence of negligence on the part of the servants of the company, and that the burden of proof was upon the defendant to show that the injury was unavoidable.

Other instructions were given for the plaintiff to the effect that defendant was liable if the injury could have been avoided by the exercise of reasonable skill and care; that it was incumbent on the defendant to have skillful and prudent servants; that defendant was liable if the injury was caused by the negligence of its servants; and that the jury was the judge of the credibility of witnesses.

For defendant, the following instructions were given:—

" 1. The court instructs the jury that while it is true, in law, that in actions against railroad companies for damage to person or property proof of injury inflicted by the running cars of said company is *prima facie* evidence of the want of reasonable skill or care on the part of the servants of said company in reference to the injury complained of, yet when the circumstances attending the injury are shown by testimony the jury must then decide the case, not upon

presumption, but upon the proven facts and circumstances in the case.

" 2. The court instructs the jury that unless they believe from the evidence in the case that the injury complained of resulted from want of skill, proper diligence, or care of defendant's servants operating said train at the time, they will find for defendant.

" 3. That there is no reason in law or morals for holding railroad companies to a stricter measure of accountability for unavoidable misfortunes or accidents than would be exacted of the humblest citizen.

" 4. The court further instructs the jury that before the plaintiff can recover in this action he must prove, by a preponderance of the evidence, that said animals were killed by said train because of a want of skill, proper diligence, or care by defendant's servants operating said train at the time."

Defendant excepted to the action of the court in refusing the following instructions :—

" 5. The court instructs the jury that the burden of proof is on the plaintiff, and that unless they are satisfied from the evidence that due precaution was not used by the defendant or its employés to prevent the injury, they must find for the defendant.

" 6. The court instructs the jury that if they believe from the evidence that said train was running at the rate of eighteen miles per hour, and that said animals came upon the company's track only a short distance ahead of the train, and that the engineer and brakemen did everything in ' their power to stop said train' after seeing said animals, and that it was impossible so to do before striking said animals, then the jury shall find for the defendant."

In the record is an instruction numbered seven, which was asked on behalf of the defendant.  It is marked : " Refused and no. 1 given instead."  It is shown that some interlineations and changes were made in this instruction, and that another, embodying substantially the same principle, was written out and given in lieu of it.  The substituted instruction was handed to the counsel who represented the defendant in the court below and he destroyed it.

The action of the court in refusing the seventh instruction is complained of. Because of its destruction, the charge that was given in lieu of the refused instruction does not appear in the record.

The jury rendered a verdict in favor of plaintiff.

A motion for a new trial was made upon the ground that the verdict was contrary to the law and evidence. This was overruled, and judgment being entered in favor of plaintiff, the defendant appealed.

*W. P. & J. B. Harris,* for appellant.

1. There is no material conflict in the testimony. It is absolutely certain that the animals came upon the track just in front of the engine, and that it was impossible to stop the train before they were struck. Even the plaintiff's testimony shows this. The witness Lee says that he did not see the stock until the whistle blew and then the train was right on them. In this he fully corroborates the engineer, who shows that the animals came suddenly upon the track and that he instantly blew the whistle for brakes, reversed the engine, sanded the track and did every thing possible to stop the train, and, although it was a freight train running eighteen miles an hour, he did stop inside of three hundred yards. The defendant met the presumption arising from the fact of injury, and showed beyond question that it was unavoidable : the testimony for plaintiff showed this and a verdict against the defendant should not have been permitted to stand. Even the witness Johnson, who volunteered an opinion as to the character of the killing, shows that he did not see the stock until the whistle sounded and then the train was at the cattle-guard.

2. The court erred in refusing the sixth and seventh instructions for defendant. Certainly the facts did not justify a verdict for plaintiff in any view of the case : on the contrary the facts were all favorable to the defendant. The points embraced in these instructions are not covered by any of those that were given in the case. The seventh instruction is almost in the language of this court announced in *R. R. Co.* v. *Bourgeois,* 66 Miss. 3, and appellant was entitled to it.

*L. P. Yerger,* on the same side.

Argued orally by *J. B. Harris,* of counsel for appellant.

*Calhoon & Green,* for appellee.

1. The verdict is right. Plaintiff showed that the animals were on the track fifty or one hundred yards in front of the engine, and that they ran thirty yards before being struck. The whistle did not blow until they were right on them, and the train did not slow up until they were struck.

2. Appellant lost nothing by the refusal to give the 6th and 7th instructions. The jury were fully instructed as to the law. Besides the refused instructions related to the degree of care required after the stock were *seen,* when there was culpable negligence in not seeing them.

The modified charge given in lieu of the 7th is not in the record.

*S. S. Calhoon,* of counsel for appellee, made an oral argument.


CAMPBELL, J., delivered the opinion of the court.

In view of the fact that the circuit court refused the instruction no. 7 in the record and gave one in lieu of it, which was destroyed by the counsel who asked it, our conclusion is to consider the case as if instruction no. 7 was not in it. This is the just course, since counsel by destroying the substituted instruction precluded the possibility of determining by inspection what was the action of the court. In examining the other instructions in the case, the only error discovered is as to some given at the request of the defendant, notwithstanding which a verdict was rendered for the plaintiff, and while we doubt its correctness it is not without evidence to support it, and we are unwilling to disturb it.

*Affirmed.*