### CHARLES L. BENTON *vs.* JOHN S. STARR.

New Haven Co., June T., 1889. ANDREWS, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

It is provided by Gen. Statutes, § 1206, that any woman pregnant with or who has been delivered of a bastard child, may complain on oath to a justice of the peace in the town where she dwells, against the person she charges with being the father of the child, and that such justice shall thereupon issue a warrant and cause such person to be brought before him, and, if probable cause is found, shall bind him over to the Court of Common Pleas. A complaint was made to a justice of the peace by *B*, averring that he was the father and guardian of *F*, who had been delivered of a bastard child of which *S* was the father, to which both *B* and *F* made oath, but which contained no averment that *F* was a minor. A warrant was issued upon it, and the defendant appeared before the justice and pleaded a general denial, and was bound over to the Court of Common Pleas, in which court the case was tried upon a general denial, and no objection was made to the complaint in respect to form or substance. Held, on an appeal by the defendant from the adverse judgment of that court—

1. That the complaint was defective in form and that the defect might have been reached by a proper preliminary plea.
2. But that after pleading a general denial and going to trial upon that issue, it was too late for the defendant to take advantage of the defect.
3. That the omission to aver that *F* was a minor was a defect of substance, but that this fact was argumentatively alleged in the allegation that the plaintiff was her guardian, and that as the defendant had not demurred to the complaint on the ground of the defect, he could not now take advantage of it.

The defendant offered evidence of the declarations of a third person that he was the father of the child. Held that, while the defendant would have the right to prove, in his own exculpation, that such person was the father, yet the mere declarations of the latter that he was so were not admissible.

And held that such declarations were not rendered admissible by the fact that they were made at so early a time that his knowledge of her pregnancy would strongly tend to prove his guilt.

Declarations of the mother of the child to her own mother as to the time when and place where the child was begotten and other circumstances attending the matter, held admissible in corroboration of her testimony.

The prosecutrix testified that, some time after the child was begotten, the defendant paid her a small sum of money. Held that, to rebut the presumption that this was a recognition of peculiar relations with her, the defendant had a right to show that his wife had requested him to pay that sum to her for a debt she owed her.

[Argued June 28th,—decided October 30th, 1889.]

COMPLAINT under the bastardy act. The defendant was bound over upon it, by a justice of the peace, to the Court of Common Pleas in New Haven County, and the case was tried in that court before *Bradstreet, J.* Judgment for the plaintiff and appeal by the defendant. Ths case is sufficiently stated in the opinion.

*J. W. Alling* and *H. G. Newton*, for the appellant.

*E. P. Arvine* and *E. Zacher*, for the appellee.

LOOMIS, J. This is a bastardy suit. The complaint first alleges the capacity in which the plaintiff appears—"as he is father and guardian of Fannie E. Benton," and then avers that on the 5th of December, 1886, she was delivered of a bastard child begotten by the defendant on or about the 1st of March, 1886; that in the time of her travail at the birth of the child she was put to the discovery and charged the defendant with being father of the child, and has been constant in her accusation; that when the child was begotten she was and ever since has been a single woman; and that the child lived until the 17th day of December, 1886, and that she was subjected to great expense for its maintenance. The complaint was signed by the father of Fannie alone, but was sworn to by her and her father also. There was no allegation that she was a minor, but the fact appeared in evidence. The plea was a general denial.

During the trial no objection was made to the complaint, for want either of proper form or substance. The trial judge after the trial, but before his decision, called attention to the fact that there was no allegation in the complaint that Fannie was a minor; and afterwards, while the judge had the case under advisement, counsel for the defendant wrote him, claiming for the first time that the suit should have been in the name of Fannie, and this point is made one of the prominent reasons for appeal.

There was undoubtedly a defect in the form of complaint which could have been reached by a proper preliminary plea.

o

But as the general issue was pleaded and the parties confined themselves to this issue during the entire trial, we do not think the judgment ought now to be set aside on account of the objections made by the defendant. The complaint on its face shows that it was instituted solely in the plaintiff's capacity as guardian and for the sole benefit of his ward. It shows that the injury was to the ward alone, and in terms avers that in consequence "*she* was put to great expense," etc. And it appears also that she, as well as her guardian, made oath to the complaint; so that in substance there was a compliance with the statute that requires the injured woman to "complain on oath to a justice of the peace in the town where she dwells, against the person she charges with being the father of such child." Gen. Statutes, § 1206.

The omission to allege that Fannie was a minor was of course a defect, but inasmuch as it is alleged that Charles L. Benton is her guardian, which necessarily implies minority, the latter fact is argumentatively alleged, and such a defect is waived by the omission to demur and by the pleading of the general issue. Gould's Pleading, chap 3, sec. 28, and chap. 10, secs. 18, 19.

The remaining questions for review relate to the rulings of the court relative to the admission of evidence. The principal complaint under this head is that the court improperly rejected as evidence for the defendant the declarations of Alexander St. Mare, made in one instance on the 18th of June, 1886, to one Corey, to the effect that Fannie was with child and he was the father, and again to one Hunt on the 1st of July, 1886, to the same effect, and in addition asking advice whether he had better leave town or not; and still again early in August of the same year, that he told one Bristol that Fannie was in the family way and that he was the father of the child, and that they had agreed to charge it upon the defendant.

The principle established by the decision of this court in *State* v. *Beaudet*, 53 Conn., 542, that the defendant may exculpate himself by showing the fact of another's guilt by evidence directly connecting him with the *corpus delicti*,

but that disconnected declarations of third persons are to be excluded, is conceded by both parties. But while the plaintiff claims the principle as completely vindicating the ruling complained of, the counsel for the defendant on the other hand contend that the question in the case at bar is distinguishable from that and governed by other principles. They contend that because the act which results in bastardy must be by the concurrence of two persons and implies a conspiracy, therefore the declarations of any male person as to his own guilty connection with the transaction, whom the defendant may accuse in order to exculpate himself, is admissible to show that the declarant and not the defendant is the father of the bastard. If the principles governing conspiracy, which the defendant invokes, could apply, it is to be noticed that the declarations of the alleged co-conspirator relied upon in this case were subsequent to the conspiracy act, and not in furtherance of any common design, and would therefore be excluded. Besides, in order to admit the declarations of a co-conspirator, a foundation must be previously laid by evidence which in the opinion of the trial judge makes a *primâ facie* case. In this case the only foundation would be the concurrent act of the parties resulting in bastardy, which is the main fact in the case, and was found against the defendant and not for him.

Again, it was claimed in behalf of the defendant that the same reasons that allow the declarations of the mother as to the fatherhood of the child, require and justify the admission of the declarations of the suspected father; that her declarations are admitted because they are facts illustrative of her conduct, and so are part of her conduct, and are independent facts pointing out the father.

We find equal difficulty in accepting this reasoning. The declarations or accusations of the mother in such cases have never been considered by our courts as independent facts showing the fatherhood of the child, but as corroborative only of her testimony in court to the same effect. *Booth* v. *Hart*, 43 Conn., 480; *Robbins* v. *Smith*, 47 Conn., 182. This kind of corroboration was at first required by statute where

the woman was the prosecutrix. For nearly a century and a half the woman was allowed to testify under oath, while the privilege was denied to the reputed father. But at the same time and for his security against a possibly false oath, the statute, in addition to the oath of the mother, required constancy in her accusation and that she should be put to discovery at the time of travail. *Chaplin* v. *Hartshorne*, 6 Conn., 44. This was regarded as a condition precedent to a recovery until the law allowed all parties in interest in all cases to testify. The statute still retains essentially the same provisions as to corroboration, but it is now not a condition indispensable to a recovery, but can be used to make a *primâ facie* case, and to throw the burden of exculpation on the defendant. But whether the prosecutrix rests her case on preponderance of proof or avails herself of the provision for a *primâ facie* case, her constancy of accusation is still regarded as confirmatory only of her testimony. We readily concede however that it is a most natural and effective corroboration. We may adopt the statement made in the brief for the defendant, and which is used to support the argument we are considering, "that as matter of fact the female, when her pregnancy becomes apparent to her friends and acquaintances, (and apparent it must become,) will be called upon by everybody to name the father." We may even go further and concede that her declarations in such circumstances are in some sense illustrative of her condition and conduct, and yet we fail to see any analogy between such declarations and those now in question, made by one not accused at all by the prosecutrix, but only by the defendant for his own exculpation.

There is surely nothing in the condition or conduct of such an one to be illustrated by his self-accusing declarations. Were he really accused by the mother of the bastard it would be most natural for him to deny the charge. It is of course strange that he should voluntarily have made such declarations, and if made, his motive cannot well be divined, and yet we know it is possible for a reckless man to make such statements from other motives than because they are

true, and as long as the mother of the child did not accuse him he would naturally consider that there would be little risk from his own accusation.

But the defendant urges another reason for admitting the declarations. He claims to have shown that in June, 1886, the appearance of Fannie did not excite suspicion, but that in fact she was then with child; and that no one knew it but herself and the man concerned in the transaction, and that the declarations of St. Mare prove knowledge on his part at that early date, and knowledge proves guilt. In order however to make the mere fact of knowledge indicative of guilt, all other possible sources of knowledge except those derived from his own guilty connection with the affair must first be excluded. The defendant offered evidence tending to close the avenues of knowledge to be derived from the appearance of Fannie, from her own direct disclosure, and from her father and mother. But obviously there were other avenues not closed. Fannie not suspecting her own condition may have consulted a physician, who from the symptoms discovered her real condition and revealed it to St. Mare, or the latter from his own observations or from hearing her describe her feelings might have formed an opinion to the same effect, or the defendant himself may have collusively revealed the fact to him.

Our conclusion on this part of the case is, that none of the considerations urged in behalf of the defendant are sufficient to justify the admission of the declarations in question as evidence to exculpate the defendant.

The next alleged error which we will consider is that the court admitted the declarations of Fannie to her mother as to the circumstances of time and place when and where, as she claimed, the child was begotten. This we think was in strict accordance with our settled practice. The circumstances referred to were really part and parcel of her accusation, and were as important to the defendant if he was innocent, as to the plaintiff if he was guilty.

In this, as in other cases where corroboration of the in-

jured woman is allowed, our practice permits greater detail
than is allowed in some other jurisdictions.

In *State* v. *Kinney*, 44 Conn., 156, the superiority of our
rule as to corroboration in rape and attempts at rape was
demonstrated, and the reasoning applies equally well to the
corroboration required in bastardy suits. PARK, C. J., in
delivering the opinion of the court, after some general rea-
soning on the question said:—" Why, on the same principle,
ought not her statement of the details to be evidence? If
her story were untrue, the greater would be the opportunity
for detection, and the accused would be helped in his de-
fense. If her story were true, the evidence would show con-
stancy in the charge even to the details, and the truth would
the more clearly appear. We think then on principle our
rule is the better one for the ascertainment of truth."

We do not think a new trial should be granted because
the court excluded an answer to the question whether St.
Mare had been seen riding with his wife. The record shows
that his wife had left him early in August, 1885, a year and
four months before the birth of Fannie's child, and that St.
Mare had continued to live at the Benton house alone until
the latter part of March, 1887. It therefore appeared that
the relations between St. Mare and his wife were not friend-
ly, which is the utmost that could be inferred from an an-
swer to the question. The defendant had the full benefit of
the fact that St. Mare had been seen riding with Fannie and
had a difficulty with his wife. It is impossible that an answer
to the question objected to could have thrown any light on
St. Mare's relations to Fannie, which was the sole object of
the inquiry so far as the same was legitimate.

Only one question more remains to be considered. The
finding shows that Fannie, the prosecutrix, had testified in
support of her suit that the defendant some months after
the alleged intercourse had given her at one time one dollar
and at another time fifty cents.

It is obvious that this evidence was offered to show some
recognition on the part of the defendant of peculiar rela-
tions to Fannie, or as showing some inducement to improper

intercourse.   The defendant on his part had the right to meet and overcome this evidence by showing that the act was entirely innocent.   This he attempted to do as to the fifty cents by showing that in handing that over to Fannie he was merely paying his wife's debt to the girl, pursuant to his wife's request.   The wife was offered as a witness and asked if the fifty cents was given at her request, and if so, to state the facts and the reason.   The plaintiff objected to the question as immaterial and irrelevant, and the court excluded it.   In this respect we think the court erred.

A new trial is granted.

In this opinion the other judges concurred.