SIDNEY JOHNSON *v*. KITTY LOU WALKER.

1. BASTARDY.   *Dismissal of suit.*

    The dismissal of a bastardy suit without prejudice is not a bar to a subsequent suit upon the same cause of action.

2. SAME.   *Jurisdiction.   Venue.   Code 1892, § 249.   Code 1892, § 2359.*

    The jurisdiction and venue of the preliminary proceedings in a bastardy suit are governed by Code 1892, § 249, providing for the making of complaint to any justice of the peace, among others, of the county where the woman was delivered of the child, and not by Code 1892, § 2359, regulating the jurisdiction and venue of ordinary suits before justices of the peace.

3. SAME.   *Complaint.   Affidavit.   Justice of the peace.   Code 1892, § 249.   Code 1892, § 934.*

    It is no objection to a complaint in a bastardy case that it was sworn to before a justice of the peace other than the one before whom the suit was begun, because:

    (*a*) Code 1892, § 249, regulating the subject, does not require the complaint to be under oath; and

    (*b*) If it were necessary or proper that it should be under oath, Code 1892, § 934, empowers justices of the peace to administer oaths and take affidavits whenever the same may be necessary or proper in proceedings in any court.

4. SAME.   *Code 1892, § 252.   Issue to be joined.   Waiver.*

    While Code 1892, § 252, provides that the circuit court shall, in bastardy cases, cause an issue to be made up as to whether the reputed father be or be not the real father, a finding in plaintiff's

favor will not be set aside because such formal issue was not made up, where the parties waived the same by proceeding to trial upon the plaintiff's written complaint and an affidavit of defendant denying that he was the real father.

5. SAME.  *Presence of child in court.*

In bastardy proceedings the momentary presence of the child in the courtroom does not constitute reversible error, where plaintiff's counsel immediately and quietly directed that it be removed, and no profert of the child was made to the jury, nor offered to be made, and no reference thereto was made by the counsel in the presence and hearing of the jury.

6. SAME.  *Mother's declarations in travail.  Evidence.  Code 1892, § 257.*

In bastardy proceedings, declarations made by the mother during travail relative to the paternity of the child are competent, although the mother survives, notwithstanding Code 1892, § 257, declaring such declarations admissible after the death of the mother, when proved to be dying declarations.

7. SAME.  *Harmless error.*

In bastardy proceedings, where competent declarations of plaintiff made during travail as to the paternity of the child were admitted and were before the jury, subsequent testimony relative to the same matter was not so prejudicial as to warrant a reversal, when considered with instructions directing the jury to weigh such statements and declarations with great caution, and stating that they were not binding on defendant.

8. SAME.  *Mother's denials of pregnancy.*

In bastardy proceedings, the exclusion of evidence that plaintiff, a young girl, denied up to the date of her confinement that she was pregnant, or that she had ever had carnal connection with any man, was not prejudicial error.

9. SAME.  *Engagement to marry.  Broken off.  Not renewed.*

In bastardy proceedings, where defendant had admitted that he had been engaged to plaintiff, and continued to visit her after the engagement was canceled, and was with her alone at night at the times and places and under the circumstances detailed by her as being the times and places when the acts of intercourse took place, the exclusion of testimony that the engagement had never been renewed was not prejudicial error.

10. SAME.  *Appeal.  Estoppel to allege error.*

In bastardy proceedings, defendant could not complain of testimony that plaintiff had caused him to be arrested on a charge of seduction, where the testimony was brought out by defend-

ant's own counsel on cross-examination over the objection of plaintiff's' counsel, and in spite of the ruling of the court sustaining the objection.

11. SAME. *Bastardy proceedings. Instructions. Code* 1892, ¿ 258.

In bastardy proceedings, an instruction in the exact language of Code 1892, § 258, authorizing the jury to assess such damages as it may think proper in complainant's favor, and to direct the same to be paid annually or otherwise for any term of years not exceeding eighteen, etc., is correct.

FROM the circuit court of Tate county.

HON. JAMES B. BOOTHE, Judge.

Miss Walker, the appellee, was plaintiff in the court below; Johnson, the appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*W. J. East,* for appellant.

Counsel cited the following authorities: Code 1892, § 2395; 31 Wis., 600; 3 Ency. Pl. & Pr., 292, 300; 39 Ind., 352; Code 1892, § 249; 17 L. R. A., 715, 720; 32 Kan., 296; 17 Pick. (Mass.), 252; 3 Wis., 605; 67 Vermont, 339; 7 Cush. (Mass.), 512; 50 Am. St. Rep., 251; 83 Miss., 290; 54 Am. St. Rep., 588; 52 Am. St. Rep., 507; 56 Am. Dec., 219; 82 Miss., 784; 4 Allen (Mass.), 435; 2 Ency. of Evidence, 244.

*J. F. Dean,* for appellee.

Counsel cited the following authorities: *Mooney* v. *People,* 96 Ill. App., 622; Code 1892, § 249; *Ib.,* § 257; *Ib.,* § 934; Underhill on Criminal Evidence, sec. 525; *Hutchinson* v. *State,* 19 Neb., 263; *Leonard* v. *Bolton,* 148 Mass., 66; 5 Cyc., 660; *Benton* v. *Starr,* 58 Conn., 285; *Harty* v. *Malbry,* 67 Conn., 339; *Robbins* v. *Smith,* 47 Conn., 182; *Scott* v. *Donovan,* 153 Mass., 378.

HOUSTON, J., delivered the opinion of the court.

This is a proceeding under chapter 15, Code 1892, by appellee against appellant. On August 16, 1904, appellee, a single

woman, resident in Tate county; was delivered of a child there-in. The next day she made affidavit before J. H. Wallace, a justice of the peace of district No. 5 of said county, under Code 1892, § 249, alleging that appellant was its father. On the return-day she appeared before Wallace, withdrew the affidavit, and dismissed her suit, the judgment reciting that the dismissal was "without prejudice." On the same day she made another affidavit before McKinnon, justice of the peace of district No. 3, taken before C. P. Varner, another justice of the peace of district No. 4 of said county, and he issued his warrant upon it. On the return-day thereof appellant made a motion to dismiss the case because of the above facts, alleging and prov-ing also that defendant below was a householder and resident of district No. 5. This motion being overruled, Varner, after trial, required him to give bond for his appearance in the cir-cuit court. In the circuit court plaintiff below filed her declara-tion. Defendant renewed his motion, which, being overruled, he traversed the allegations of said declaration. Trial being had upon the merits, the jury returned a verdict for $1,000. Judgment was entered thereon, ordering defendant to pay said sum at once, or to execute his bond for $1,000, payable to the state, to pay on the 1st day of January, 1905, and annually thereafter, for nine years, the sum of $100 for the support and education of said child, etc. After motion for new trial was overruled, defendant prosecuted this appeal.

We think the motion to dismiss was properly overruled. That the dismissal "without prejudice" before Wallace, justice of the peace, did not bar the appellee from instituting another suit, and was not *res adjudicata,* is settled by *Wilson & Gray* v. *May Pants Co.* (Miss.), 37 South. Rep., 813. Counsel for ap-pellant cites 3 Ency. Pl. & Pr., 300, to the effect that an adjudi-cation in this proceeding is a bar to a subsequent prosecution on the same charge; but the same authority adds this, "But it seems that, unless the judgment is on the merits, it cannot be pleaded in bar," and cites decisions of several states, and they

and the footnotes fully sustain the proposition that it is not a bar unless the case is tried on its merits. See, also, footnotes to 5 Cyc., 674; *Mooney* v. *State,* 96 Ill. App., 622; and *Weatherford* v. *Weatherford,* 56 Am. Dec., 221, note.

Justice of the Peace Varner had authority to issue the warrant and jurisdiction to try the case, even though the affidavit was made before the justice of the peace of another district, and the defendant was a householder and resident in neither of their districts. Code 1892, § 2395, has no application to this character of proceedings. Code 1892, chapter 15, is *sui generis.* Section 249 thereof provides that "the mother can make complaint before any justice of the peace of the county where she may be delivered," etc. No affidavit and no written complaint are expressly required by the statute. But even if an affidavit were required, it can be made before a justice of the peace other than the one who issues the warrant and tries the case. Code 1892, § 934; *Mooney* v. *State,* 96 Ill. App., 622; 3 Ency. Pl. & Pr., 296–298.

As to an issue not being made up, even if there is any necessity for a formal issue or formal pleadings, other than the denial by defendant of the charge (as it is said there is not in the last two authorities cited), the issue was properly made up in the instant case, within the contemplation of Code 1892, § 252. The affidavit and declaration of the plaintiff were filed, alleging that the defendant was the father of the child, and the defendant filed his affidavit in the circuit court, traversing this allegation. Besides, defendant went to trial on this issue, without making objection until after judgment in his motion for a new trial.

The assignment of error as to the child being brought into court is untenable. There is diversity of opinion as to whether the child may or may not be exhibited before the jury for their inspection as evidence in the case to show its resemblance to defendant, by comparing the features and appearance of the two, and as to whether counsel may

not draw attention to and comment on this resemblance. Among others, the states of Iowa, North Carolina, and Massachusetts, permit this to be done. See *Hunawalt* v. *State* (Wis.), 24 N. W., 489 (54 Am. St. Rep., 589); *Scott* v. *Donovan,* 153 Mass., 379 (26 N. E., 871). We are not called upon in this case to express any opinion as to which is the better and sounder doctrine, as this record shows affirmatively that, as soon as the mother brought the child into the courtroom, plaintiff's counsel directed plaintiff's father in an undertone to have it removed, which was done by plaintiff's sister, who was only about thirty feet away; that the child was in the presence of the jury for only about two minutes; that no profert of the child was made to the jury, and none offered to be made; nor was any reference to the baby made by counsel in the presence and hearing of the jury, and no attention called to it in any way. The authorities are uniform on the proposition that this does not constitute error—certainly not reversible error. In *Hutchison* v. *State,* 19 Neb., 266 (27 N. W., 114), the mother held the child in her arms in plain view of the jury during the entire time that she was testifying as a witness, to which due objection and exception was taken. The court said, *inter alia:* "It must be apparent to any mind that the mere presence of the child could have no prejudicial effect upon the rights of defendant."

Nor do we think that the admission of the evidence as to the declaration made by complainant during travail relative to the paternity of the child constituted reversible error. This question has never been adjudicated by this court. The decisions are not uniform as to the admissibility of such declarations, but the better doctrine seems to be that they are admissible for the purpose of corroborating her evidence. 5 Cyc., 660, 661, while saying that "declarations of the prosecutrix tending to corroborate her testimony are generally inadmissible," immediately adds, "Accusations of the defendant during her travail may, however, be shown in corroboration of her evidence," cit-

ing cases.   See also *Benton* v. *Starr,* 58 Conn., 285 (20 Atl.,
450) ; *Harty* v. *Malloy,* 67 Conn., 339· (35 Atl., 259) ; *Scott*
v. *Donovan,* 153 Mass., 378 (26 N. E., 871) ; *Robbins* v.
*Smith,* 47 Conn., 182; *Reed* v. *Haskins,* 116 Mass., 199.   Wig-
more, who is recognized as one of the highest authorities on the
subject of evidence, in his valuable new book, says: "There is
no reason why this should not be the general rule."   And this,
on common law principles.   Wigmore on Evidence, vol. 2, p.
1340, sec.· 1141.   While the text of 2 Ency. of Evidence, p.
244, cited in the able and exhaustive brief of counsel for appel-
lant, seems to deny the competence of such evidence, yet, in
the note thereto (pp. 245, 246), it uses this language: "The
mother is a competent witness to show in corroboration of her
testimony that in the time of her travail she accused the de-
fendant of being the father of the child."   Also, that "declara-
tions of the complainant made during travail as to the paternity
of the child are admissible in corroboration of her testimony."
Counsel in his brief says, "The doctor could not tell what she
said," and cites *Weatherford* v. *Weatherford,* 56 Am. Dec.,
219, note, and *Eddy* v. *Gray,* 4 Allen (Mass.), 435.   These
cases only hold that the declarations which the attending physi-
cian made to her during travail relative to her condition or
peril are admissible.   They do not apply to what she might
have said to him.   In the instant case the record does not show
that Dr. Orr said anything whatever to her about her condition
or peril.   He asked her how long she was going to stick to the
fact that it was Sidney Johnson.   She replied: "Until I die."

It follows that instruction No. 4, given the plaintiff, was not
error.   It only tells the jury that they may consider the declara-
tion of plaintiff, that defendant was the father of the child, in
connection with all the other testimony in the case, and give it
such weight as they may deem proper.   Nor do we think that
Code 1892, § 257, militates against or excludes the conclusion
that such declarations are admissible.   By its express language
that section purports to deal with, and as a matter of fact only

and merely deals with, the admissibility, after or "when the mother is dead," of her declarations in her travail, and was simply intended to extend the doctrine of admissibility to the period after her death, and in the contingency that she should die, and to provide that in the event of such a contingency they might, if proved to be her dying declarations, be received in evidence, not as corroborative merely, but as original substantive, evidence, when the trial of the case occurred after her death. It left the question as to their admissibility when she was living, at the time the case was tried, just as it was before its passage. Without this statute the mother's deathbed declarations as to the paternity of the child were generally held to be inadmissible. 5 Cyc., 661, note. The sole and only object of the statute was to extend the doctrine as to dying declarations to such declarations of the mother in bastardy proceedings, and to place beyond controversy their admissibility, not merely as corroborative, but as original and substantive, evidence.

In our opinion, the testimony of Mrs. Perkins, that appellee, during her travail, told witness that appellant was the father of her child, was admissible. This being so, the jury already having before it this competent evidence as to that statement, we are unable to see from this record how the subsequent testimony of Dr. Orr and Mrs. Florence Walker, the mother of appellee, relative to this same matter, and only cumulative, could operate so prejudicially upon the rights of defendant with the jury as to warrant us in reversing this case. The court expressly instructed the jury, at defendant's request, that they should carefully weigh and consider with great caution these statements made by the plaintiff as to who was the father of the child, and that such statements and declarations made by the plaintiff, in the absence of the defendant and without his knowledge or sanction, are not binding upon him and cannot affect his interest, and further instructed them "that they should also carefully weigh the plaintiff's evidence," as "this is a case where the charge is easy to fabricate and difficult to defend."

By these instructions the declarations complained of became almost as "fangless serpents and shorn Samsons," so far as being able to work harm to defendant was concerned. At least these cautionary instructions, with others, were quite as liberal to the defendant as he was entitled to, and must have minimized the effect of this corroborative evidence.

We find no reversible error in the other exceptions to the ruling of the court on the evidence. Even if appellee did deny up to the date of her confinement that she was *enceinte* or that she had ever had criminal conversation with any man, this was but natural, and what every young girl of eighteen years would have done, as every juror of any intelligence would know, and its exclusion could not be prejudicial error. The evidence fails to show any such criminal relations, and the verdict of the jury settles that there were none at the period of conception. Nor was the exclusion of the testimony of defendant that he and plaintiff never renewed their engagement to marry after it was canceled during Christmas of 1902. He had previously sworn to this before the jury without objection, and also afterwards, and thereby secured the benefit of it. Besides, he expressly admits that they were engaged about two or three years before October, 1904, and that he visited her often for several years, and still continued to visit her "about like he had before this engagement was canceled." He further admits that he was with the appellee alone at night, at the very times, places, and under the circumstances detailed by her as being the times and places when and where he, after having previously failed to subdue her chastity, as she swears, under promise of marriage, persuaded her to yield to him, polluted her chastity, blasted her honor and hope, and blighted her future happiness and life. As is so often the case, her love for him seemed too strong for her virtue, as it is often too strong for law and morality. And these times were at or very near the proper period of conception according to the ordinary course of nature with respect to the birth of the child; and there was no evidence that the period

of her gestation was extraordinary or unusual. In fact, he admits nearly every material fact and circumstance testified to by her, except the actual acts of intercourse. *McClellan* v. *State,* 66 Wis., 335 (28 N. W., 347), was a strikingly similar case to the instant one. The court there said "that the defendant had been alone with her on occasions which he admitted, and had driven home with her several times late at night. This evidence and these circumstances corroborate the testimony of complainant, and we cannot say that the jury were not warranted in finding defendant guilty beyond a reasonable doubt. It was only material that defendant had intercourse with her at or near the proper time which, in the course of nature, might have made him the father of the child." The complainant was only eighteen years old, and she would not at all likely become a willing or swift witness against an innocent man. Cold, willful, and corrupt perjury would not be likely to reside in the tender and untutored nature of such a young girl.

Relative to the appellant's complaint that the court allowed appellee to testify to the fact that she had appellant arrested, charging him with seduction, and that the jury must have considered this in determining upon their verdict, this record shows that appellant's counsel himself asked appellee this very question on cross-examination; and, although appellee's counsel objected and the court sustained the objection, appellant's counsel, without reserving an exception, continued to question her in regard to it without further objection from counsel for appellee or further ruling by the court. Under such circumstances we fail to see how appellant can now successfully or consistently complain of this.

As to the other exceptions to the evidence respecting the conduct of this once spotless and stainless, but now sorrow-stricken, disgraced, and deflowered young girl, the "glass of whose virginity" was broken by this appellant (as she swears, and as the jury has found) before the bud of girlhood could bloom or blossom into the beautiful flower of womanhood, and whose

honor and happiness are ruined and wrecked and lost forever, we content ourselves with quoting and commending the language of that great jurist, William L. Harris, in his opinion found in *Anonymous*, 37 Miss., 58: "The interests of justice do not require it, nor is the good of society promoted by permitting the errors of a woman's whole life (perhaps sorely repented of by her, though never forgiven by the community) to be dragged from her own lips, and perpetuated in judicial history, for the mere gratification of her seducer. It is a sufficient stigma upon the age that, while it consigns to unatonable infamy the inexperienced victim who has yielded herself to his gratification, he bears no part, in public estimation, or at least a very inconsiderable one, in the degradation, ruin, and lifelong wretchedness he has produced. The state has a deep interest in the equality of punishment, as well as the inducement to reformation, in cases of this character; and the disparity of suffering and inequality in social position, already existing, should neither be augmented nor countenanced by tribunals established to administer justice." We think the court was sufficiently liberal to the appellant in regard to permitting evidence as to the conduct and character of appellee in this case.

We find no reversible error in the action of the learned lower court, in the modification of the instructions asked by defendant or in granting those requested by the plaintiff. Instruction No. 6 granted the plaintiff was in the very language of Code 1892, § 258, and was correct. Even if instruction No. 3 given for the plaintiff was error (as we do not think it was), it was cured by the very liberal charges given for the defendant, especially charge No. 1, relating to the same phase of the case. *Scarver* v. *State,* 53 Miss., 406; *Skates* v. *State,* 64 Miss., 644 (1 South. Rep., 843; 60 Am. St. Rep., 70). Even in a murder charge, an erroneous instruction for the prosecution will not cause the reversal of a death sentence, if the instructions for the accused so clearly explain the law that the jury cannot be misled. *Nelson* v. *State,* 61 Miss., 212.

On account of the commendable zeal and earnestness displayed by counsel for appellant in behalf of his client, and the importance of our decision to all parties concerned, we have given an unusually careful consideration to this case; but the consideration has not resulted in our being able to affirm that the right result has not been reached by the jury, and that the same result would not inevitably be reached on a new trial, which would necessitate a rehearing and a rehashing of the harrowing and not morally healthy details of this most unfortunate case, without any corresponding good, so far as we are able to judge, after looking back over a completed trial and carefully scanning and conning this record. The testimony is conflicting, the jury has passed upon these controverted questions of fact, and, in view of our inability to say that it was unwarranted in arriving at the conclusion evidenced by its verdict, or that it is manifest from the whole record that its finding is clearly wrong, we feel constrained to let the verdict and judgment stand. *R. R. Co.* v. *Cantrell,* 70 Miss., 329 (12 South. Rep., 344); *R. R. Co.* v. *Williams,* 67 Miss., 18 (7 South. Rep., 279); *McAlexander* v. *Puryear,* 48 Miss., 420; *R. R.* v. *Mason,* 51 Miss., 234; *Buckingham* v. *Walker,* 48 Miss., 609.

*Affirmed.*