# GEORGE BRENNAN *v.* STATE OF MARYLAND.

*Bastardy Proceeding—Evidence—Identity of Father—Declarations of Other Man—Admissions of Guilt.*

In a bastardy proceeding, the prosecuting witness may testify as to who is the father of the child, even though this is, under the circumstances, the expression of an opinion.          p. 267

Questions asked the wife of another man, whom defendant claimed to have been the child's father, as to whether she accused her husband of having gone out with the prosecuting witness, and as to what he said, and as to why she sent for the prosecuting witness, were properly excluded as irrelevant.     pp. 267, 268

Evidence to the effect that on the day of the child's birth relatives of the prosecuting witness visited such other man, was also inadmissible.          p. 268

Evidence was also inadmissible that three months before the child's birth such other man had a baby carriage sent to the home of the prosecuting witness and her parents, it appearing that about that time her mother gave birth to a child, for which, as a friend of the family, such man became god father.
          pp. 268, 269

The general rule being that declarations of a third person are not admissible to show that he is the father of the child, actions of such person, susceptible of an innocent construction, are not admissible for that purpose.          p. 269

Evidence as to the prosecuting witness' association with other men under suspicious circumstances, at or about the time of the conception, should be limited to matters which tend to prove illicit relations between her and such other men.          p. 269

On a prosecution for bastardy, while ordinarily declarations of a third person that he is the father of the child are not admissible, yet such declarations *held* to be admissible when contained in a letter in his own handwriting, found on such person's body at the time of his suicide, which occurred on the day of the child's birth, if the suicide was the result, not of

threats against him by the relatives of the prosecuting witness, but of his own conviction that. he was responsible for her condition.       pp. 270-273

The statements in the letter being admissible, verbal admissions of his guilt, made by such person to his sister, were also admissible, to corroborate such statements.       p. 273

*Decided June 29th, 1926.*

Appeal from the Criminal Court of Baltimore City (STEIN, J.).

Bastardy proceeding against George Brennan. From a judgment of conviction, he appeals. Reversed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and WALSH, JJ.

*Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellant.

*Herbert Levy, Assistant Attorney General,* with whom were *Thomas H. Robinson, Attorney General, Herbert R. O'Conor, State's Attorney for Baltimore City,* and *Herman M. Moser, Assistant State's Attorney,* on the brief, for the State.

WALSH, J., delivered the opinion of the Court.

The appellant was convicted of bastardy by a jury in the Criminal Court of Baltimore City, whereupon the court suspended sentence and paroled him on condition that he pay the sum of $2.75 weekly for the statutory period, for the support of the alleged illegitimate child, and from this action of the court this appeal was taken.

The State has filed a motion to dismiss the appeal on the ground that a suspension of sentence is not a final judgment and that hence no appeal can be taken, but for the reasons stated by us in the case of *Kelly v. State,* 151 Md.

87, this term, where the same question was raised, we think this motion must be overruled.

There are twenty-six bills of exceptions in the record, all pertaining to rulings on the evidence, and, as many of them relate to or raise the same questions, we will, so far as possible, group them together in disposing of them. The first exception was taken to the court's action in permitting the prosecuting witness to state who was the father of her child. The objection to this is apparently based on the theory that the answer of the witness would be only the expression of an opinion. This is not always true. Usually the prosecuting witness testifies, as she did in this case, that the defendant is the only person with whom she has had improper relations, and under such circumstances her testimony as to who the father is cannot properly be said to be an expression of opinion; it is a statement of fact. But even where it is an opinion, we think the prosecuting witness has sufficient special knowledge to justify her expressing such an opinion. The whole proceeding is based upon her allegation as to who the father is, and we see no reason why she should not be permitted to tell the jury the name of the man who she claims is the father.

The defendant endeavored to show at the trial below that a married man, with whom the prosecuting witness had some association and who, on June 4th, 1924, the day the child was born, committed suicide, was the child's father, and most of the exceptions were taken to the refusal of the lower court to admit certain testimony which the defendant claimed tended to prove the guilt of this man. The third to the sixth exceptions, inclusive, relate to certain alleged admissions made by this man to his relatives, and these exceptions will be considered in connection with the twenty-fifth and twenty-sixth, which were taken to the court's refusal to permit the defense to show the contents of a letter found on the married man's person at the time of his death. The seventh and eighth were taken to the court's ruling that the married man's wife could not be asked whether

she accused her husband of having gone out with the prosecuting witness and what he said, and why she sent for the prosecuting witness at the time she did, but we see no error in these rulings. The facts proposed to be shown are not relevant to the issue and would open up a line of inquiry which might lead very far afield. The wife's suspicions are certainly not competent to prove her husband the father of this child, and as there was no denial of the husband's acquaintanceship and association with the prosecuting witness there was no occasion or reason to try to prove this association by mere hearsay evidence.

The ninth exception was taken to the court's refusal to permit a witness to testify that on the day the child was born relatives of the prosecuting witness visited the married man at the store where he was employed. It is difficult to understand on what theory this evidence was offered, and we find no error in its exclusion. The second and tenth exceptions relate to testimony showing the manner in which the married man died, and these exceptions will be considered later. The eleventh to the twenty-second exceptions, both inclusive, all pertain to efforts on the part of the defendant to show that about three months before the child involved in this case was born the married man had a baby carriage sent to the home of the prosecuting witness. Most of the rulings involved in these exceptions were clearly correct, because of the failure of the questions to indicate any connection between the sending of the carriage and the married man, or because of the inability of the witnesses to testify of their own knowledge that the carriage was ever delivered; but, aside from these objections, we do not think, under the circumstances of the case, that the testimony was admissible at all. It appears from the record that this married man was quite intimate with the family of the prosecuting witness; that about a month before the baby carriage was alleged to have been sent to her home her mother gave birth to a child and this man became the child's godfather, and it would seem to be a great deal more likely

that the baby carriage was intended for this child rather than for the then unborn child of the prosecuting witness. There was not even a proffer to show that the carriage was sent to the prosecuting witness, the only proffer being that it was sent to her home, which was also that of her parents.

The general rule is that declarations of a third party are not admissible to show that such third person is the father of the child. *Baehr v. State,* 136 Md. 128, 134; 7 *C. J.* 991. If this is so, it certainly cannot be held that actions of a third party which are, to say the least, as susceptible of an innocent construction as they are of an imputation of guilt, can be introduced to show that such third party is the father. It should always be borne in mind that the real inquiry is as to the guilt or innocence of the defendant, and while the courts permit evidence as to the prosecuting witness' association with other men under suspicious circumstances at or about the time of conception, such testimony should be limited to matters which tend to prove illicit relations between the prosecuting witness and such other men. As was said by Chief Judge Boyd in the case of *Seibert v. State,* 133 Md. 309, 314: "Such evidence may sometimes be very material—especially when the traverser denies the paternity of the child and when he denies that he had ever had sexual intercourse with the prosecuting witness, as this traverser did—but it is of a dangerous character unless it is carefully guarded. It may lead to the investigation of collateral matters and take the jury away from the real issue to be determined by it." We think the sending of the baby carriage too remote and uncertain an incident to be competent under the circumstances of this case, and we will accordingly affirm the action of the learned court below in excluding the testimony concerning it.

We find no error in the twenty-third exception. It was taken to what appears to us to have been an entirely harmless remark by the trial judge, and we are unable to understand how the remark could have prejudiced the appellant.

The second exception involves the striking out by the

court of the statement of a sister of the married man that he committed suicide on June 4th, 1924. This was hearsay and clearly inadmissible. The remaining exceptions we will consider together. The third and fourth involve the court's refusal to permit this same witness to state whether her brother ever told her of his relationship with the prosecuting witness or admitted that he was the father of the unborn child of the prosecuting witness; and the fifth and sixth exceptions were taken to the exclusion of testimony that this married man tried to borrow money from his sister for the purpose of having an abortion performed on the prosecuting witness. These questions were followed by a proffer to prove the matters just mentioned and a further proffer to show that this married man had stated that he had been threatened by the family of the prosecuting witness because of his responsibility for her pregnancy. The tenth exception was taken to the refusal of the court to permit the death certificate of the married man, showing his death by suicide, to be introduced in evidence. The twenty-fourth exception was not pressed and could not have been successfully pressed. The twenty-fifth and twenty-sixth exceptions were taken to the court's refusal to permit a witness to testify to the contents of a letter in the handwriting of the married man which was found on his person at the time of his death, and was subsequently lost or mislaid. These last two exceptions were followed by a proffer to prove that this letter "recited accusations and threats against" the married man "because of his responsibility for the pregnant condition of" the prosecuting witness "and setting forth that reason as the motive for his suicide." The State contends that the manner in which the married man died is immaterial, and that the testimony covered by the other exceptions simply amounts to declarations by a third party that he committed the offense charged against the defendant and so is hearsay and inadmissible. Both of these contentions would ordinarily be correct. That the manner of the third party's death is, considered by itself, immaterial, would seem to be obvious, while the rule holding inad-

missible the extra-judicial declarations of a third party, not
made under oath, that he committed the crime charged
against a defendant, is supported by the great weight of au-
thority. *Munshower v. State,* 55 Md. 11, 19-20; 16 *C. J.*
643, and cases cited in notes. And this is true even though
the declarant be dead. 16 *C. J. supra; Donnelly v. United
States,* 228 U. S. 243. And in addition to this, it has been
specifically decided in Maryland that, in a prosecution for
bastardy, statements of a party other than the accused that
such person was the father of the child in question are not
admissible. *Baehr v. State, supra.* Such evidence is hear-
say and, though it is a declaration against interest, the courts
have generally excluded it, because of its tendency to promote
fraud and perjury and thus seriously to interfere with the
administration of criminal justice. It is not difficult to see
the abuses to which the general admission of such testimony
might lead. Every one accused of crime would be tempted
to introduce perjured testimony concerning statements of
some third person, then beyond the jurisdiction of the court,
admitting that such third person, and not the defendant, had
committed the crime in question, and the experience of courts'
renders it certain that many would yield to such a tempta-
tion. A rule sanctioned by so much authority and supported
by such sound reasons should not, in our opinion, be departed
from except in very unusual cases. We think, however, that
the present case is unusual, and that the reasons ordinarily
urged against declarations of third persons do not apply with
especial force in this case. The testimony regarding the
declarations of the married man was to come from his sister,
and from a letter in his own handwriting, which stated that
his suicide was caused by his responsibility for the pregnant
condition of the prosecuting witness. His suicide was co-
incident with, and apparently brought about, by the birth of
the illegitimate child; his association and acquaintanceship
with the prosecuting witness were admitted, and all these
matters were so connected and related with each other and
with the question of the child's paternity, as to force the

average mind to concede their material relationship to the question at issue.   There is no suggestion of any collusion between the defendant and his witnesses on this matter; no friendship or association of any sort is shown to have existed between the defendant and the deceased married man or the latter's family; and, indeed, the ordinary experience of human nature would rather justify the inference that these parties would be hostile rather than friendly towards each other.   These circumstances greatly minimize, if they do not entirely eliminate, the possibility of any fraud or perjury regarding these declarations.   Men do not commit suicide in order to assist a rival and comparative stranger to defend a bastardy charge, nor would the relatives of a suicide in such a case as this ordinarily conspire with this rival to perjure themselves in his defense.   With these unusual circumstances surrounding this proposed testimony and safeguarding it against the dangers of fraud and perjury which are generally urged against similar evidence, we think it should have been admitted.   In so holding we are not to be understood as in any way questioning the rule which holds inadmissible the extra-judicial admissions of third persons, that they committed the crime charged against the defendant.   We affirm this rule, but hold that the circumstances which exist in this case justify our making an exception to the rule.   The married man's suicide seems to us to be an incident so connected with the issue as to render it a spontaneous and uninfluenced act, and one to which the general experience of mankind requires giving an evidential value.   The defendant had no part in it, and it certainly cannot be said on the record before us that the act was planned to help the defendant, or to further in any way the interest of the deceased.   It was an act committed through fear or shame, occasioned by the deceased's knowledge of his guilt, or his dread of being accused of the offense, and it occurred on the very day the illegitimate child was born.   Of course. if the defendant fails at the retrial of the case to prove that the letter found on the deceased contained an admission of guilt and assigned this guilt as the

reason for his rash act, then neither the fact of the suicide nor the verbal admissions of guilt made by the deceased prior to his death would be admissible. We say this because the proffer of the defendant as to the contents of the letter is not as clear and positive on this point as it might be, but we think a fair construction of it, as it is set out in the record, justifies the construction we have placed upon it. However, if the proof shows this construction was wrong or does not measure up to it, then the evidence would not be admissible. If this evidence concerning the suicide is admitted, then we think the verbal declarations of the married man, as embraced in the third, fourth, fifth and sixth exceptions, are also admissible as corroborating the statements contained in the letter.

The case is a close and difficult one, but we think that under all the facts and circumstances disclosed by the record the defendant is entitled to the benefit of the testimony covered by the seven exceptions just discussed, provided he proves by competent testimony that the married man actually committed suicide, not because of any threats against him by the relatives of the prosecuting witness, but because of his own conviction that he was responsible for her condition. For this reason the case will have to be reversed and a new trial granted.

*Judgment reversed and new trial awarded, with costs to the appellant.*

URNER and OFFUTT, JJ., dissent.