## Beverly Ferguson *v.* Robert Smazer

King, C. J., Murphy, Shea, Alcorn and Comley, Js.

Argued October 8—decided December 3, 1963

*David D. Berdon,* with whom, on the brief, was *Irwin D. Mittelman,* for the appellant (defendant).

*A. Robert Gordon,* for the appellee (plaintiff).

KING, C. J. The jury returned a verdict in favor of the plaintiff in a bastardy action which she instituted against the defendant. Within the six-day period allowed by what is now § 254 of the 1963

Practice Book, the defendant filed a motion for a new trial on the ground of newly discovered evidence. See cases such as *Hoberman* v. *Lake of Isles, Inc.,* 138 Conn. 573, 575, 87 A.2d 137.

In brief, the motion stated that as a result of a newspaper account of the trial published the day after the rendition of the verdict, four persons came to the defendant and told him of certain statements made by George Twenty, then deceased, which the defendant claimed would tend to prove that George rather than the defendant was the father of the plaintiff's child. The defendant procured four affidavits, one from each of the persons, setting forth what the affiant would testify to concerning George's statements, and annexed them to his motion in the form of exhibits. See cases such as *Lancaster* v. *Bank of New York,* 147 Conn. 566, 577, 164 A.2d 392; *Sengebush* v. *Edgerton,* 120 Conn. 367, 370, 180 A. 694.

The court denied the motion on the basic ground that none of the affidavits sets forth testimony which would be admissible on a new trial, even if a new trial were granted. George died on July 25, 1961 and at the time of his death he was the husband of Patricia Twenty, who is the plaintiff's sister. These facts are clearly conceded by all parties.

A new trial on the ground of newly discovered evidence will not be granted unless the court finds that it is reasonably probable that on a new trial there would be a different result. *Lancaster* v. *Bank of New York,* supra, 578. Unless the evidence claimed to have been newly discovered would be admissible on a new trial, it could not affect the outcome of such a trial. It necessarily follows that if the court was correct in its holding that the material evidence set forth in the affidavits would

be inadmissible, its action denying the motion for a new trial was correct.

The first affidavit stated in effect that George told his brother Paul, the affiant, that the plaintiff had accused George of being the father of her child and wanted George to support the child. That this was inadmissible hearsay is obvious. Neither the plaintiff's lack of constancy in accusation nor her admission by speech or conduct that George was the father of her child could be proved in such a manner. It was not, of course, a statement against George's proprietary or pecuniary interest, nor was it a statement as to pedigree.

The second affidavit was substantially the same as the first, except that the affiant was Carlos H. Twenty, George's father. This statement was inadmissible hearsay for the same reason as was the statement in the first affidavit.

In the third affidavit, the affiant was Alice Twenty, George's mother. She stated that George told her that the plaintiff "is going to have a kid and they are trying to blame it on me". This statement is, if possible, more clearly inadmissible than the declarations of George in the first two affidavits since it is not even clear that the word "they" included the plaintiff or that she made any such statement. In other words, apart from its basic hearsay infirmity, it does not even indicate that the plaintiff was inconstant in her accusation or by speech or conduct claimed George was the father of her child.

The fourth and final affidavit is that of Clara Wilson and in effect sets forth that George's parents lived in the upstairs apartment of the house in which Clara and her family had lived since June, 1959; that George would occasionally visit the downstairs apartment to use the telephone; and that on one oc-

casion, while the plaintiff was pregnant, George told the affiant that he was the father of the child. The defendant claims that this statement, although obviously hearsay, was admissible under each of two exceptions to the hearsay rule, that is, as a declaration involving pedigree and as a declaration against pecuniary interest.

That George's statement, had he been alive, would not have been admissible for the truth of the matters stated therein, was settled in the case of *Benton* v. *Starr,* 58 Conn. 285, 287, 20 A. 450. This case seems to be in accord with the general rule. 10 Am. Jur. 2d, Bastards, § 113. Indeed, a similar rule is generally followed in criminal cases with respect to extrajudicial confessions by third persons. *State* v. *Mosca,* 90 Conn. 381, 386, 97 A. 340; 5 Wigmore, Evidence (3d Ed.) § 1477, p. 289; note, 48 A.L.R. 348. The defendant claims that since the declarant was dead at the time of trial, the rule of *Benton* v. *Starr,* supra, does not apply. *Brennan* v. *State,* 151 Md. 265, 134 A. 148, cited by the defendant, does not support his claim. The opinion points out that but for the most unusual character of the facts, the declaration would have been inadmissible. In Massachusetts, a claim that such evidence was admissible was rejected in *Farrell* v. *Weitz,* 160 Mass. 288, 35 N.E. 783.

The conditions precedent to the admissibility of a declaration involving pedigree are well summarized in *Shea* v. *Hyde,* 107 Conn. 287, 289, 140 A. 486, as follows: (1) The declarant must be dead.[2] (2) He must, if present, have been qualified as a witness to testify. (3) The declaration must have been made

---

[2] That unavailability, as distinguished from death, may fulfil the first requirement, see cases such as *Dwight* v. *Brown,* 9 Conn. 83, 93; 5 Wigmore, Evidence (3d Ed.) § 1481.

before the controversy, in the trial of which it is offered, had arisen. (4) The declarant must have had no interest to misrepresent in making the declaration. (5) The declarant must have special knowledge of the subject matter of the declaration. (6) The relationship of the declarant to the family under inquiry must be established by evidence independent of the declaration itself.

The affidavit states that the claimed declaration was made during the pregnancy of the plaintiff. As far as appears, the controversy as to the paternity of the plaintiff's illegitimate child arose before the admission of paternity is claimed to have been made. See *Benton* v. *Starr,* supra, 289. Our rule is settled that the word "controversy" refers to the subject matter of the dispute and not merely to the actual litigation growing out of the dispute. *Turgeon* v. *Woodward,* 83 Conn. 537, 542, 78 A. 577 (quoting with approval from *Hamilton* v. *Smith,* 74 Conn. 374, 381, 50 A. 884). Quite apart from any other considerations, it is clear that the defendant failed to show that the third condition precedent to the admissibility of the evidence as a declaration involving pedigree had been satisfied.

The conditions precedent to the admissibility of statements of third persons under exceptions to the hearsay rule "are deemed to render the declaration in question 'equivalent in reliability and trustworthiness to the standard of ordinary testimony when subjected to cross-examination' ". *Shea* v. *Hyde,* supra; see *Chapman* v. *Chapman,* 2 Conn. 347, 349. Where, as here, at least one condition precedent to the pedigree exception is not established—that the statement was made before the controversy arose— the evidence is inadmissible under that exception.

We turn now to the claim that the statement was admissible as a declaration against interest.[3] It is true that George was dead at the time of trial, and necessarily unavailable as a witness, and that at the time he made the statement it was against his pecuniary interest to admit paternity of the plaintiff's illegitimate child, since it would expose him to possible civil liability in a bastardy action. Both conditions were indispensable prerequisites to the admission of George's claimed declaration against interest. See cases such as *Dwight* v. *Brown,* 9 Conn. 83, 93; *Rogers* v. *Moore,* 10 Conn. 13, 18; and see 5 Wigmore, Evidence (3d Ed.) §§ 1456, 1457, 1461, 1462, 1466, 1469.

But the fundamental rationale of the admission of a declaration against interest, on the part of a third person, is that, under the particular circumstances, the statement is trustworthy, that is, that safeguards reasonably equivalent to the oath and the test of cross-examination exist.[4] *Shea* v. *Hyde,* supra; 5 Wigmore, op. cit., § 1457. The dangers inherent in this type of evidence are so great that a trial judge should not admit it unless, in the exercise of a sound discretion, he concludes that the particu-

---

[3] Two leading articles on this exception are: Jefferson, "Declarations Against Interest: An Exception to the Hearsay Rule," 58 Harv. L. Rev. 1; Morgan, "Declarations Against Interest," 5 Vand. L. Rev. 451.

[4] Testimony as to admisssions by a party to the suit must be distinguished from declarations against pecuniary or proprietary interest on the part of a deceased third person. 5 Wigmore, Evidence (3d Ed.) § 1475. For one thing, a true declaration against interest derives its trustworthiness in part from the fact that it was thought, by the declarant, to be against his interest at the time he made it. 5 Wigmore, op. cit., § 1466. This is not necessarily so in the case of an admission of a party, nor would death or unavailability be a condition precedent to its admissibility. *Johnson* v. *Rockaway Bus Corporation,* 145 Conn. 204, 209, 140 A.2d 708.

lar declaration against interest meets this test. 5 Wigmore, loc. cit.; see also *Brady* v. *State,* 226 Md. 422, 429, 174 A.2d 167, aff'd, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215.

In the present case, the trustworthiness of the claimed declaration is subject to a number of infirmities. There is no evidence, outside of the hearsay declarations referred to in the first two affidavits, which would in any way connect George with the plaintiff. His purported statement was a mere disconnected declaration of a third party. *Benton* v. *Starr,* supra, 288. But for the inference to be drawn from the fact that George's wife was the plaintiff's sister, as far as appears George did not even know the plaintiff. It does not appear whether he was in the company of the plaintiff during the period when conception could possibly have occurred; nor, if he was, does it appear whether the circumstances were such as to give opportunity for sexual intercourse. Cf. *Brennan* v. *State,* 151 Md. 265, 271, 134 A. 148. As pointed out in *Benton* v. *Starr,* supra, 289, it is strange that a man in his situation should have made such an admission of paternity, and if he did, his motive for so doing cannot well be divined. Furthermore, George might well have had no ground for any real knowledge as to whether he was or was not the father of the plaintiff's child, especially prior to the child's birth, which was when he was claimed to have made the declaration. This difficulty is well brought out in cases such as *Lyman* v. *Lyman,* 90 Conn. 399, 401, 97 A. 312. See cases such as *State* v. *Ferrone,* 97 Conn. 258, 264, 116 A. 336; *Gray* v. *Mossman,* 91 Conn. 430, 437, 99 A. 1062; see also 5 Wigmore, Evidence (3d Ed.) § 1471 (pointing out that the declarant, like any other witness, must have had knowledge of the fact asserted in the declara-

tion).[5] The rule requiring knowledge is especially important where, as in the case of claimed declarations against interest, the safeguards of oath and cross-examination are unavailable. None of the unusual features tending to give the declaration the stamp of truth and obtaining in *Brennan* v. *State,* supra, existed in this case. Under all the circumstances, the mere fact that George's declaration as to paternity appears to have been a declaration against pecuniary interest and the further fact that he died before trial do not, even in combination, provide safeguards as to trustworthiness which are in any way reasonably equivalent to those which the plaintiff would have had if George had been under oath and open to cross-examination. See *State* v. *Mosca,* 90 Conn. 381, 388, 97 A. 340. It would have been an erroneous abuse of discretion for the trial court to have found such safeguards present. George's claimed declaration of paternity was therefore inadmissible as a declaration against interest.

There is no error.

In this opinion MURPHY, SHEA and COMLEY, Js., concurred; ALCORN, J., concurred in the result.

---

[5] On this latter ground, declarations as to paternity were excluded in the case of *Lloyd* v. *Powell Duffryn Steam Coal Co.,* [1913] 2 K.B. 130, 141, where a posthumous illegitimate child claimed to be the dependent of a deceased workman. The statements of the putative father admitting paternity were held to be inadmissible in evidence as declarations against interest because the condition was not satisfied "that the fact stated . . . [must be] one of which he has 'peculiar knowledge,' or 'direct personal knowledge' to the exclusion of hearsay". The case was reversed on other grounds in [1914] A.C. 733, a decision criticized in 28 Harvard Law Review 299. In *In re Jenion, Jenion* v. *Wynne* [1952] 1 Ch. 454, however, the rationale of the 1913 *Lloyd* opinion was approved, although its consideration (pp. 465, 477, 487) appears not to have been necessary to the decision of the case.